O'NEAL et al. v. VOSE et al.

No. 30884. Jan. 25, 1944.

*145 P. 2d 411.*

Howard B. Hopps and A. D. Erdberg, both of Oklahoma City, for plaintiffs in error.

D. A. Richardson and Earl Pruett, both of Oklahoma City, and Hal C. Thurman, of Dallas, Tex., for defendants in error.

OSBORN, J. This is an appeal from a judgment of the district court of Oklahoma county granting permanent injunction perpetually restraining the defendants from using lot 11 in Colcord Heights addition to the city of Oklahoma City for any purpose other than as provided and shown in a certain agreement entered into relative to the restricted use of certain real property intended for residence purposes only. Judgment being rendered for the plaintiffs, defendants have appealed. The parties will be referred to as they appeared in the trial court and by name.

The plaintiffs alleged in their petition that they occupied as homes and were individually the owners of lots 9, 10, 11, and 12 in block 8 of Classen's Highland Parked addition and lots 1 to 7, inclusive, and 9 in Colcord Heights addition to Oklahoma City, and are using said premises exclusively for the purpose of private residences on each of said tracts; that with the exception of lots 11, 10, and 8 in Colcord Heights addition, owned by Elizabeth D. O'Neil, Adeline Schneider, and Frieda Gutche, respectively, the plaintiffs are, collectively, the owners of the entire tracts of land embraced and included in a contract and agreement made a part of the petition and referred to. The agreement shows that on June 15, 1911, the owners of all of the land located within Colcord Heights addition composing a single block, joined by the owners of lots 9, 10, 11, and 12 in block 8 in Classen's Highland Parked addition, located on Fourteenth street immediately north of Colcord Heights addition entered into a contract relative to restrictions upon the use of the property exclusively for residence purposes and other restrictions, certain parts of which contract will be shown and referred to later.

The plaintiffs further alleged that they had complied with all of the conditions of said agreement and that all of the premises occupied by the plaintiffs were being maintained as private residence property; that defendants in possession of lot 11, owned by defendant Elizabeth D. O'Neil, were using the property as a boarding and rooming house, and the servants quarters located on said lot were being used by persons of African descent; that by reason of such prohibited use of the property the adjoining property belonging to plaintiffs was rendered less valuable for residential purposes, and asked for injunctive relief.

It being shown that Robert G. Sieber and Nora P. Sieber had become owners of lot 11 of Colcord Heights addition since filing the petition, an order was issued substituting them as parties defendant. The other defendants demurred to the petition, and the same being overruled, failed to plead further and were declared in default.

Defendants filed their answer and cross-petition denying material allegations, admitting ownership of lot 11; alleged that the purported contract was void in that it lacked mutuality, was unfair, unequal, and against public policy; that lot 11 had been continuously used for business purposes since 1927, with signs advertising such use openly dislayed thereon, all of which plaintiffs knew or should have known, and that no steps had been taken to enforce the provisions of the contract until the filing of this suit, and that plaintiffs had waived their rights, if any, by reason of their acquiescence, laches, and neglect; that the plaintiffs' action is barred by the statute of limitations. Defendants further alleged that there had been material and substantial change in the character of the area and of surrounding area in that hospitals, funeral homes, grocery stores, meat markets, drug stores, and beauty parlors have been established thereabouts and have thereby destroyed the value of the area for residential purposes, and asked that injunction be denied and that the contract be held to be void.

The plaintiffs filed their reply, denying all allegations inconsistent with their petition; alleged that they had no knowledge at any time more than five years from the filing of the action that lot 11 was being used for any purposes violative of the terms and provisions of the contract, and that if so, use was not so obvious as to charge plaintiffs with notice; that such use constitutes a continuing breach and that plaintiffs do not seek any remedy for any breach occurring more than five years prior to commencement of the action, but seek remedy for breach of contract occurring at and immediately prior to suit.

Among the many other restrictions provided for in the agreement were that all of Colcord Heights addition should be restricted exclusively to residence purposes, and provided that the covenants contained in the agreement shall

run with the land and be binding upon all parties thereto, their successors, heirs and assigns, and none of the terms or conditions can be waived or modified in any part except by the unanimous consent of the persons then owning all of the lots considered in the agreement, and that any owner of any such lot may at any time maintain a proper action at law or in equity to prevent any violation or the continuance of the same.

The defendants present four propositions in support of their contentions for reversal of the judgment. It is first contended that the contract has expired by its own terms; that the restrictive contract sued upon specifically states that the desire of the parties is to restrict Colcord Heights addition exclusively to residence purposes in the same manner as Classen Highland Parked addition is restricted. This restriction referred to is the restriction contract or agreement provided for by the grant and dedication plat of the property, with streets and alleys, as an addition to the city of Oklahoma City, consisting of 40.68 acres of land, dated October 26, 1900; and defendants further contend that the restrictions theretofore imposed on Classen's Highland Parked addition was for a term of 25 years and had expired. It seems that the authority for contending that the restrictions were for only 25 years was based upon the fact that certain deeds conveying certain lots in Highland Parked addition provided that the restrictions, covenants, and conditions shall remain in full force and effect for 25 years from the date of the respective deeds.

The instrument dated October 26, 1900, referred to, imposed restrictions without any limitations as to the time on all property in the addition and, as has been shown, included block 9, which was afterwards subdivided into lots as Colcord Heights addition, but did not restrict the use of the lots "exclusively to residence purposes" as did the contract agreement dated June 15, 1911. If we understand the contention of defendants, it is that, from the restric-

tion period shown in some of the deeds executed to certain lots prior to the June 15, 1911, contract in controversy, it was intended that Classen's Highland Parked addition was restricted for only 25 years, and since the lots in Colcord Heights addition were to be restricted in the same manner as Classen's Highland Parked addition, they also were restricted for only 25 years, and construing the words "and in the same manner" to mean for the same time. That would make the restrictions under the contract of June 15, 1911, expire in 1926. Such an interpretation would destroy the value and intent of the words "ever" and "never" frequently used in the 1911 agreement:

". . . nor shall any part or portion of said building ever be used or occupied for trade or business of any kind whatever, nor shall any portion of said addition ever be used for apartment houses, for boarding houses or for any other purpose except that of private residence exclusively. . . ."

and:

". . . such buildings shall never be used or occupied for any purpose except . . ."

This court does not agree that the restriction in Classen's Highland Parked addition was limited to 25 years, nor that the words "in the same manner," found in the 1911 agreement, had any reference to time.

Courts have frequently drawn distinction between the meaning of the time of doing a thing and the manner of doing it.

"The manner of doing a thing has reference to the way of doing,—to the method of procedure,—and the element of time does not seem to be involved." Bankers' Life Ins. Co. v. Robbins, 59 Neb. 170, 80 N. W. 484.

We think the "manner" of doing a thing and the "time" of doing it are, generally speaking, distinct things, but, as shown, courts have held that manner may embrace time if it appears to be the intention to do so, but we do not think it was so intended in this instance.

We think the agreement signed on June 15, 1911, should be considered as a separate instrument and covenant wherein the property owners specifically bound themselves and their property exclusively to residence purposes with no intent to provide any specific period of time.

It is contended that the agreement or contract is not now enforceable due to change of conditions. We agree that conditions may be brought about by causes not arising from violations of restriction agreements, resulting in such a change of condition as would prevent the restricted property from being used for the direct purposes intended, even when no limitation of time of restrictions is named. But, in considering these conditions that can easily arise, we are not unmindful of the legal right of owners of adjoining properties to bind themselves by enforceable contract, restraining the use of their property for an unlimited period of time, wherein each separate owner grants to the other owners a right in his property in the nature of an easement and which shall run with the land and be binding upon the several property owners as well as all future owners, who succeed to title with actual or constructive notice of such contract or agreement and its terms. This is not a new question, but has many times been before the courts of the various states, including Oklahoma. From 7 R. C. L., p. 1115, § 31, we quote:

". . . Covenants restricting the use of property are generally held to be covenants running with the land, provided, however, they create some interest therein. Accordingly, where parties owning adjacent lots entered into an agreement, covenanting for themselves and their respective heirs, successors, assigns, lessees and tenants, that the lots should never be used or occupied for any business or public purpose whatsoever, and the defendants took title expressly subject to that agreement, it was held that such a covenant was valid, and that it was binding upon the successors in interest to the parties, although there was no privity of estate between the original parties. . . ."

We quote from 14 Am. Jur., Covenants, p. 611, sec. 197, as follows:

"According to one view it is not necessary that the restrictive agreement be put in any deed of conveyance or that it be shown by any writing. Such a covenant may be created by agreement, apart from a conveyance. Covenants and restrictions as to the use of property are matters of private contract and may be effected by separate instruments if a consideration and the other essentials of a contract are present. . . ."

Many authorities are cited sustaining that contention.

It being shown that property owners with property under restrictive agreement as to use for residence purposes and other restrictions have a right to have such restrictions fully enforced, and it being further conceded that a court has a right to refuse to permit the enforcement of such restrictions because of such change of conditions that "the original purpose can no longer be carried out," we will consider the facts and conditions in the present case and try to ascertain as to which of the two classes mentioned the present case comes within. Under this contention in defendants' brief, it is stated:

"When the agreement was signed in 1911, the area involved was exclusively residential property, probably the then finest residential district in Oklahoma City. . . . but that area has passed and its passing has been marked by vital and important changes."

The photograph exhibits made a part of the record in this case, showing the beautiful residences in Colcord Heights addition and on both sides of Thirteenth and Fourteenth streets, confirm the statement in defendants' brief that in 1911, when the agreement was signed by the property owners, the area involved was exclusively residential property and probably the then finest residential district in Oklahoma City, and further shows that at the present time it is likewise a beautiful residence district.

There was no attempt to show, in so far as the record is concerned, that any

of the lots in Colcord Heights addition could not be advantageously used for residence purposes, or that the enforcement of the restrictions would result in no benefit to the residents of Colcord Heights addition.

We cannot agree that the mere using of the defendants' property, or any other property in the district, in strict violation of the restriction contract, for boarding and rooming house, with signs exhibited advertising same, or by leasing servant quarters for residential purposes to parties of African descent, has served to defeat and destroy the original purpose to create an exclusive high class residence district. These are not conditions resulting from causes other than violations of restrictions, but, to the contrary, have resulted directly from the violation of the terms of the restrictive contract and may be corrected by the enforcement of the restrictions.

In Misch v. Lehman, 178 Mich. 225, 144 N. W. 556, the court said:

"The true rule seems to be that, even after one or more breaches, equity will grant relief if the restriction can be shown to be of value to complainant, and such breaches have not resulted in a subversion of the original scheme of development resulting in a substantial, if not entire, change in the neighborhood."

The fact that there may now be rooming houses, rest homes, garage apartments, apartment hotel and grocery store all within the radius of a block of the restricted area, as defendants state in their brief, would not tend to show that the original purpose of the restriction in this particular area can no longer be carried out and not make it inequitable to enforce any or all of the conditions, reservations, restrictions, and covenants shown by the restriction agreement. It may be true that, owing to the surrounding improvements, a less desirable class of citizens might buy the property in the restricted area and construct residences of less value and attraction than had been anticipated in the original plan, but that is not the question presented here, but rather, do the restrictions still preserve to the addition its character of a residence district, or can the original purpose be no longer carried out, and if not, "the same reasons that established its existence are valid to establish its termination."

In Continental Oil Co. v. Fennemore, 38 Ariz. 277, 299 P. 132, under facts showing restrictions similar to those here presented, the action was to enjoin the erection of a duplex. Therein the court said:

"The policy of the courts of this state should be to protect the home owners who have purchased lots relying upon and have maintained and abided by, restrictions, from the invasion of those who attempt to break down these guarantees of home enjoyment under the claim of business necessities.

"We adhere to the doctrine that the lot of appellant cannot be considered separate and apart from its relation to the entire restricted addition. Though there may be a fringe of property all around the borders of a restricted addition which would be more valuable for business than for residential purposes, this fact alone is not sufficient to warrant the breach of the restrictions by these owners."

In Van Meter v. Manion, 170 Okla. 81, 38 P. 2d 557, the plaintiff applied to building commissioner Van Meter for permit to build a brick retail business building on the southeast corner of Twenty-Third and Walker streets. There was a fire station to the west beyond Walker street, a filling station on the northwest corner of the intersection, and several store buildings used for trade immediately north of the filling station, and a drugstore and other stores in the vicinity. Van Meter denied the permit, the district court ordered the permit granted, and the cause was appealed to this court. The property was in Winans' Highland Terrace addition. The dedicating plat of the addition provided: "Upon none of said lots shall any business or merchandising or manufacturing be carried on." This court reversed the trial court and held:

"The fact that traffic has increased on streets surrounding a restricted area may be considered as evidence showing a change of conditions, but is not sufficient to warrant the releasing of affected property from a restrictive covenant.

"The lot of plaintiff cannot be considered separate and apart from its relation to the entire restricted addition. The fact that plaintiff's lot is more valuable for business purposes than residential purposes is not sufficient to warrant a breach of the restrictions."

In Magnolia Petroleum Co. v. Drauver, 183 Okla. 579, 83 P. 2d 840, suit was brought to restrain the defendant oil company from erecting a service station in Crestwood addition to Oklahoma City. The restrictions provided:

"No building shall ever be used or occupied for any purpose except for that of private residence exclusively, nor shall any part or portion thereof ever be used for business or trade of any kind whatsoever."

The trial court granted the injunction and on appeal this court sustained the holding of the lower court. In our opinion we said:

"But we hold that to permit such use would result in an inequitable, if not wholly illegal, infringement of the rights of the other owners. We so conclude for the reason that there is no sufficient showing here that the original purpose and intent of the restrictions have been altered or destroyed by changed conditions, and there is not sufficient evidence that the original purpose cannot be accomplished as to the owners of block 18, and that substantial benefits may not yet inure to the residents of said block by the enforcement of said restrictions."

Similar questions were before this court in Southwest Petroleum Co. v. Logan, 180 Okla. 477, 71 P. 2d 759, involving two suits, wherein the plaintiffs owned their residences in Lincoln Terrace addition to Oklahoma City. Many property holders in the restricted district had given leases to drill for oil and gas. The trial court granted an injunction and the same was sustained by this court upon appeal, wherein we said:

"From our examination of the entire record we conclude that the addition still has substantial value to the lot owners for residential purposes. Under these circumstances, although the property is undoubtedly valuable for oil and gas purposes, this will not relieve the defendants from the restrictions, for we cannot say that the original purpose of preserving to the home owners in the addition a purely residential district cannot be accomplished by granting the injunctions."

The same is true in the instant case, and we think the court committed no error in enjoining the continued violations of restrictions in the restricted residence area.

It is contended that the plaintiffs' cause of action is barred by the statute of limitations. This claim seems to be based upon the contention that defendants' property had been used in violation of the restrictive agreement for a period in excess of ten years prior to the institution of this action, and that the violations were open and notorious. It is contended that the provisions of the 1911 agreement providing that any owner may:

". . . at any time maintain a proper action at law or in equity to prevent any violation or continuance of any violation of any of the terms and conditions of this agreement * * * and that a use of any portions of said addition for any purpose herein prohibited shall not be construed as a waiver of the right any time to institute proceedings to prohibit the continuation of such violations . . ."

—is an attempt to perpetually waive the statute of limitations and is void and is against public policy. This question has been amply considered in connection with the preceding contention, wherein it has been shown by numerous authorities that covenants restricting the use of property are generally held to be covenants running with the land, and that such covenants are bind-

ing upon the successors in interest to the parties, although there was no privity of interest between such successors and the original parties. The portion of the restricted agreement would be as binding upon subsequent owners as on the original parties to the agreement.

In Southwest Petroleum Co. v. Logan, supra, speaking of the nature and duration of such restrictions, we said:

"The restrictions need not rise to the dignity of a grant or reservation, but create an equitable right in the nature of an easement, enforceable in equity against all persons taking with notice, even if it rests on no broader principle than that equity will enforce a proper contract concerning land against all persons taking with notice of it."

This provision is not, we think, an attempt to waive the statute of limitations, but was intended to make clear the intent of the parties that a violation thereof could be prevented, or the continuation of a violation thereof not only could be prevented, but also it would not constitute a waiver of the right to enforce said agreement. We think this was a proper subject for contract between the parties.

The defendants contend that plaintiffs are not entitled to injunctive relief. This contention also seems to be based wholly upon the claim that the plaintiffs have knowingly allowed defendants' property to be used for a long period of years in violation of the restrictions without any attempt to prevent same, and that the plaintiffs are chargeable with laches. It is also contended that, if plaintiffs should not be denied relief on the ground of laches, relief should be denied because of the ten years' delay in starting this proceeding.

In the instant case the remedy sought is to prevent the continuance of the use of the property in violation of the restriction agreement, and not to enjoin against the maintenance and general use of certain improvements which had been erected in violation of restrictions

and where no attempt had been made to prevent such construction. Whether or not a party has been guilty of laches usually presents a question which must be decided upon the facts of each separate case.

The record does not show any act on the part of the plaintiffs which would tend to recognize the right of the defendants, or any one of them, to use the property in violation of the restrictions. Neither is it shown that defendants or their grantors went to any expense in the preparation of their property whereby it could be more advantageously used in violation of the restrictions, or that defendants have made such use of the property under any agreement with any of the plaintiffs.

There has been no attempt to show that the defendants were surprised or would suffer injury caused by delay of the plaintiffs in bringing this action. The record shows that the defendants purchased the property in question while this action was pending.

In Kirkpatrick v. Baker, 135 Okla. 142, 276 P. 193, this court held:

"The question of whether a claim is barred by laches must be determined by the facts and circumstances in each case and according to right and justice. Laches' legal significance is not mere delay, but a delay that works a disadvantage to another."

In Parks v. Classen Co., 156 Okla. 43, 9 P. 2d 432, this court said:

"While lapse of time is an important element of laches, yet unless a case falls within the operation of the statutes of limitation there appears to be no fixed period within which a person must assert his claim or be barred by laches. Laches, unlike limitations, is not a mere matter of time, but depends largely on the circumstances of the particular case and is principally a question of the inequity of permitting a claim to be enforced, an inequity arising out of some intermediate change of conditions."

This court being of the opinion that the trial court committed no error in

rendering the judgment herein, the same is affirmed.

CORN, C. J., GIBSON, V. C. J., and BAYLESS, HURST, and ARNOLD, JJ., concur. RILEY, WELCH, and DAVISON, JJ., absent.