SMILIE v. TAFT STADIUM BOARD OF CONTROL et al.

No. 33348.    March 8, 1949.

Rehearing Denied April 5, 1949.
Second Rehearing Denied April 26, 1949.

*205 P. 2d 301.*

Gilliland, Ogden, Withington, Shirk & Vaught, all of Oklahoma City, for plaintiff in error.

Suits & Fellers and W. A. Lybrand, all of Oklahoma City, for defendants in error.

HALLEY, J. This is an appeal by R. W. Smilie from a judgment of the district court of Oklahoma county denying his application for injunction. The action was brought by plaintiff in his own behalf and in behalf of others to enjoin midget automobile racing conducted at Taft Stadium. The action, in the main, is predicated on the theory that the races were conducted in such manner as to constitute the race track a nuisance.

The stadium is situated on a tract of land owned by the board of education of Oklahoma City and is located on the northwest corner of 23rd street and May avenue in Oklahoma City, in a residential area. The stadium was constructed with funds raised by public donations, pre-season ticket sales sponsored by the Junior Chamber of Commerce and board of education projects and help received from the W.P.A. It was completed and dedicated on November 9, 1934, as a civic recreational center.

Defendant, Taft Stadium Board, a nonprofit corporation, took charge of

the stadium on the 25th day of March, 1940, under written contract entered into between it and defendant board of education. The actual management of the stadium was placed in a board of control known as the Taft Stadium Board of Control and consisting of principals of Classen, Northeast and Britton High Schools, two members of the Junior Chamber of Commerce of Oklahoma City, and two business men of Oklahoma City. The athletic coaches of the schools above mentioned, the president of the Junior Chamber of Commerce, and two members of the board of education of Oklahoma City were made ex-officio members of the board. None of these persons received any compensation for their services.

The stadium, under the management of the board of control, was used for the purpose of holding and conducting various sports and entertainments, including high school and college football games, symphony orchestra concerts, rodeos, model air contests and exhibitions, band concerts and other sports and amusements. The profits derived from such events were used in making improvements on the stadium grounds.

In 1946 the Taft Stadium Board authorized and permitted Ray Lavely and O. D. Lavely, partners doing business as Lavely Racing Promoters, to conduct midget automobile racing at the stadium during the year 1946. In 1947 a written contract was entered into between the parties whereby the Taft Stadium Board leased to the Lavelys the use of Taft Stadium and its facilities one night each week for presentation of midget auto races from July 1, 1947, to January 1, 1948, for a rental of 12% of the gross gate receipts. The contract, among other things, provided that no racing should be conducted after 10 o'clock at night, or on Sunday. The Lavelys conducted races on Monday of each week during the years 1946 and 1947, beginning May 1st and ending November 1st, and were operating under the 1947 contract at the time suit was instituted.

The evidence shows that plaintiff is a resident and taxpayer of Oklahoma City and that he resides within a block and a half of the Taft Stadium; and he and eight other persons residing within three blocks of the stadium testified that the Lavelys had conducted auto races at the stadium on Monday night of each week during the summer months of 1946 and are continuing to conduct such races; that the races start at 8 o'clock in the evening and are usually concluded by 10 o'clock; that the cars participating in the races usually start warming up about 6:30 in the evening; that some of the cars are in motion at intervals during such warming-up period until the races start; that there is used in connection with the races a public-address system, which is in continuous operation from the time the cars start warming up until the races are over; that loud noises are caused by the cars participating in the races and by the public-address system, and that such noises are disturbing and annoying and interfere with witnesses in the enjoyment of their homes; that such noises are unusually loud and disturbing during the actual races; that the cars run at a high rate of speed without mufflers; that during the races, witnesses have been unable to carry on ordinary conversations; that they cannot, because of the noise, carry on a telephone conversation or hear their radios. Some of the witnesses who have small children testified that the children could not sleep while the races were in progress; that the noise was greater while the cars were engaged in actual racing than while they were warming up in preparation for the races. The evidence is undisputed that the actual time consumed by all the cars in racing on any given night does not exceed 23 minutes; that considerable time is spent between races in getting cars in position for the next race; and that during such periods some car is in motion warming up for the next race.

In addition to these witnesses, plaintiff presented a list of 58 additional wit-

nesses, and it was stipulated that all of such witnesses would testify substantially as did the others as to the effect of the noise emanating from the race track.

Plaintiff offered evidence establishing that patrons of the races parked their cars on the streets in front of the homes of persons residing in the neighborhood of the stadium; that such parking partially blocked traffic on such streets and that cars traveling in opposite directions could not pass each other while the cars were so parked. Several witnesses also testified that on various occasions patrons of the races parked their cars in such manner as to block their driveways. Evidence was also offered by the plaintiff tending to establish that the maintenance of the race track damaged the property of those living near the stadium in that it materially decreased the value thereof.

Defendants, in rebuttal to plaintiff's evidence, offered testimony of ten witnesses living near the stadium, each of whom in substance testified that the noise emanating from the race track was not of such volume and intensity as to be disturbing or annoying to them and their families; that it did not interfere with their carrying on ordinary conversations; that it did not interfere with them in their use of radios or telephones; that the noise created by the cars in warming up was no greater than the noise created by passenger cars traveling on May avenue and 23rd street, or other city streets, and no greater than that created by city busses; that the noise occurring while the cars were actually engaged in racing, while greater than that occasioned by warming up, was not of such volume or intensity as to be annoying or disturbing; that the noise caused by the public-address system was no more annoying or disturbing than the noise occurring while broadcasting a football or baseball game. Some of these witnesses who had small children testified that the children

were not disturbed by the noise accompanying the races nor by the public-address system, but that the children slept soundly during all of the time the races were in progress. In addition to these witnesses, defendant offered a list of 90 witnesses living near the stadium and it was stipulated that such witnesses would in substance testify as did the others relative to the effect of the noise emanating from the races. Several witnesses also testified in behalf of defendants that in their opinion the maintenance of the race track did not in any manner decrease the value of surrounding property.

This in substance constitutes the evidence offered in the case.

Plaintiff contends that the evidence clearly established that the race track constitutes a nuisance and that the finding of the trial court to the contrary is clearly against the weight of the evidence and is contrary to law. It is conceded that the race track is not a nuisance per se; it is, however, contended that the evidence in the instant case shows that it has been conducted and operated in such manner as to constitute a nuisance.

Plaintiff argues that the evidence conclusively shows that the noise created by the cars engaged in racing and by the public-address system was of such character as to constitute a nuisance.

In vol. 37, Am. Jur., p. 330, sec. 47, it is said:

"Generally, noise is not a nuisance per se, but it may be of such character as to constitute a nuisance in fact, even though it arises from the operation of a factory, industrial plant, or other lawful business or occupation. To render a noise a nuisance, it must be of such a character as to be of actual physical discomfort to persons of ordinary sensibilities. . . . But noises which constitute a mere inconvenience or trivial annoyance do not warrant the abating of a useful business.

"There can be no fixed standard as to what noise constitutes a nuisance, and the circumstances of the case must

necessarily influence the decision. To amount to a nuisance, the noise must be unreasonable in degree, and reasonableness in this respect is a question of fact. . . . The character and magnitude of the industry or business complained of and the manner in which it is conducted must also be taken into consideration, and so must the character and volume of the noise, the time and duration of its occurrence, the number of people affected by it, and all the facts and circumstances of the case."

In the case of Warren Co. v. Dickson, 185 Ga. 481, 195 S.E. 568, the Supreme Court of Georgia said:

"Where noise accompanies an otherwise lawful business or pursuit, whether such noise is a 'nuisance' depends on nature of locality, on degree of intensity and disagreeableness of the sounds, on their times and frequency, and on their effect, not on peculiar and unusual individuals, but on ordinary, normal, reasonable persons of the locality."

See, also, Dickson v. Warren Co., 183 Ga. 746, 189 S.E. 839.

The evidence as to the extent and effect of the noise created by the cars and the public-address system is conflicting. The unusual noise referred to by the witnesses testifying on behalf of plaintiff occurs while the cars are engaged in actual racing. The evidence is conclusive that the races only take place one night out of each week and that the actual time consumed in any one night in actual racing does not exceed 23 minutes; that the sounds caused by the public-address system and warming-up of the cars do not occur after 10 o'clock at night and do not last more than two to two and one-half hours on any one night.

The trial court, after weighing the conflicting evidence and taking into consideration all the circumstances, found that the evidence was insufficient to establish that the noise accompanying the races was of such volume, frequency and duration as to cause actual physical discomfort to persons of ordinary sensibilities, and therefore insufficient to constitute the race track a nuisance. We cannot say that this finding is clearly against the weight of the evidence.

Plaintiff further contends that a nuisance was created by reason of congested streets caused by the parking of automobiles by patrons of the races; that they parked their cars along the curbing on both sides of the streets, and that by reason thereof traffic was partially blocked, and that on several occasions the driveways of abutting owners were blocked, and that injunction should have been granted by the trial court by reason thereof. With this contention we cannot agree. The defendants have no authority or control over the streets of the city nor have they any power to regulate or prohibit parking thereon. The general rule, in the absence of statute or city ordinance to the contrary, is that travelers upon public streets of a city have a right to park their automobiles at sidewalk curbing of streets even though such parking may, to a certain extent, cause traffic congestion. In the case of Morris v. City of Salem, 179 Ore. 666, 174 P. 2d 192, it is said:

"City streets are primarily ways for public travel, and public right of travel thereon includes privilege of parking vehicles at sidewalk curbing for reasonable periods as required by reasonable exigencies of business or social intercourse."

And in the case of Sheets v. Armstrong (307 Pa. 385, 161 A. 359, the Supreme Court of Pennsylvania held:

"Auditorium in residence locality held not 'nuisance', even if attracting crowds and causing traffic congestion."

In that case the court further said:

"To the contention that the building will constitute a nuisance to the damage of plaintiffs as owners of real estate, we cannot lend a ready ear. It is said that the use of the building will

308

bring large numbers of people to it and will cause traffic congestion in its vicinity. These are among the plagues of city dwellers under present conditions, but it would be difficult legally to badge as a nuisance a building aiding in bringing about such situation."

As to the contention made by plaintiff that the maintenance of the race track has resulted in materially decreasing the value of property located near the stadium, it is sufficient to say that the trial court concluded the evidence was insufficient to sustain such contention. With this conclusion we agree.

It is further contended that the defendant board of education had no authority to lease the stadium grounds or its facilities for the purpose of conducting automobile races, that it had no authority under the statute to use the stadium or its facilities for other than school purposes, and that the trial court should therefore have enjoined its use for such purposes.

It is conceded that the board of education is governed in this respect by the law applicable to independent school districts. Independent school districts are specifically authorized by statute to construct and operate stadia, sports arenas and other recreational facilities, and are authorized to lease their grounds and facilities to persons, firms or corporations who may use and operate such facilities. Title 70, O.S. Supp. 1947, §821.2 (same as S.L. 1947, chap. 23b, sec. 2, p. 513). This statute authorizes the boards of education of independent school districts to permit their grounds, stadia and other facilities to be used for the purpose of conducting automobile races. In the case of Royce Independent School District v. Reinhardt (Tex. Civ. App.) 159 S.W. 1010, the Court of Texas Civil Appeals held that a board of education of an independent school district under the Texas statute, which clothed the school board with wide discretion, had authority to rent its grounds during the summer vacation as a baseball field, and refused to

enjoin it from so doing, and also refused to enjoin the playing of baseball on the ground that the noise emanating therefrom constituted a nuisance.

The contentions made by plaintiff that the school board permitted the use of the stadium for purposes other than intended, and that the court erred in admitting incompetent evidence, are without substantial merit.

Considering the evidence as a whole, we cannot say that the trial court erred in refusing to grant the injunction. Some discretion is vested in the trial court in such matters, and unless it can be said that it abused its discretion or that the judgment is clearly against the weight of the evidence, it will not be disturbed on appeal. Bourland v. Langford, 36 Okla. 278, 128 P. 240; Cunningham v. Ponca City, 27 Okla. 858, 113 P. 919.

Judgment affirmed.

DAVISON, C.J., and WELCH, GIBSON, LUTTRELL, JOHNSON, and O'NEAL, JJ., concur. CORN, J., dissents.