Hollis LEATHERS, Plaintiff in Error,

v.

The COMMERCIAL NATIONAL BANK IN MUSKOGEE, a corporation, and The City of Muskogee, Defendants in Error.

No. 40906.

Supreme Court of Oklahoma.

Dec. 21, 1965.

Rehearing Denied Feb. 1, 1966.

Kay Wilson, Jr. Muskogee, for plaintiff in error.

Joe H. Kennedy, Joe R. Kennedy, Kenneth C. McCoy, Muskogee, for defendant in error Commercial Nat. Bank in Muskogee.

Andrew Wilcoxen, Muskogee, for defendant in error City of Muskogee.

DAVISON, Justice.

This is an appeal by Hollis (H. K.) Leathers (plaintiff below) from a judgment in favor of The Commercial National Bank in Muskogee and the City of Muskogee (defendants below) denying plaintiff's petition to enjoin the Bank from erecting any permanent structure on any part of a certain 11 foot alley in the City of Muskogee, Oklahoma.

The subject alley is 100 feet long and runs east and west between Third Street on the east and another alley on the west that extends north and south. The plaintiff owns the tract of land immediately south of and adjacent to the subject alley and between Third Street and the other alley. A three or four story brick building is located thereon. The ground floor is occupied by business concerns with entrances from Third Street on the east. The upper stories are operated as a hotel with an entrance on the north from the subject alley, about midway of said alley.

The Bank owns the tract of land immediately north of and adjacent to the subject alley and had commenced the construction of a drive-in bank on its property, between Third Street and the other alley on the west.

The use of the alley located between the respective properties of the plaintiff and the Bank, and the acts of the Bank in using the north half of the alley (next to its property) as a location for improvements constituting a part of the drive-in facilities, are the subject of the plaintiff's action for injunction. Included in plaintiff's petition are allegations that plaintiff's right to light, air and access from and over the 11 foot strip of ground is and will be interfered with by the acts of the Bank. The answer of the Bank alleged, inter alia, that plaintiff was guilty of laches and estoppel, in that plaintiff had erected permanent improvements upon the south half of the 11 foot strip of land in dispute, and had consented to the Bank using the north half of said strip, and that plaintiff (with knowledge thereof) had stood by while the Bank prepared plans and commenced construction upon its property and upon said strip at considerable expense, and that it would be inequitable to grant plaintiff the injunctive relief. The City filed only a general denial.

Trial was had to the court. The City appeared by its attorney but took no part in the trial. The court held that plaintiff was not entitled to any judgment against the City. The court further held that, based on the evidence and as a matter of equity, the plaintiff was not entitled to enjoin the Bank from using the north half of the alley-way, or from interfering with plaintiff's alleged right to light, air and access to the said north half.

It is plaintiff's contention that the judgment is contrary to the evidence and the law.

The record reflects that in many of the conveyances of the property of both plaintiff and the Bank for many years prior to November 24, 1920, the 11 foot passageway was referred to as a source of light, air and access to the properties. On the above date a resale tax deed was issued for the 11 foot strip of land, and on July 8, 1921, a subsequent owner of this title conveyed the same to the City of Muskogee, with the condition that the property be kept and maintained as a permanent public alley-way for public use. On July 22, 1921, the City, by resolution, accepted the strip for use as a public alley.

The plaintiff bought his property in June, 1958, and the following August constructed a covered passage-way upon the east 60 feet of the south one-half of the alley, next to his building. This consisted of a concrete block wall on the outside or north side, with spaced openings at the top, and with a roof of felt and tar laid upon boards from the top of the wall across to the wall of plaintiff's building. The floor was of several inches of cement poured over the alley brick paving. The east end was open with a brick column and cornice and metal awning, and

the west end had a doorway and door. This covered way was for use in reaching the north door entrance to the upper hotel floors, and also was available to members of the public having occasion to walk through the alley. There was some testimony that at times the rear or west door was fastened shut. At the same time the plaintiff put in a concrete street curb to the center of the alley at its east opening on Third Street.

The Bank acquired its property in January, 1962, and removed the old brick building thereon. It announced its plans to build a drive-in bank. It is not disputed that after the Bank bought the property the plaintiff had numerous talks with the Bank's officers and agents about the alley. Testimony on behalf of the Bank was that during most of 1962 the talks were about vacating the alley and counter offers by the Bank and plaintiff to buy the other's interest to the center of the alley, and about the Bank using the north half of the alley. Nothing came of the counter offers to buy. The Bank's witnesses testified that plaintiff stated he had no objection to the Bank using the north half of the alley. The Bank's testimony was that relying on plaintiff's statement, it had plans and specifications prepared for the drive-in bank in which the north half of the alley was a part, and let a contract for construction of the structures. These plans were submitted to the City as a part of the application for a building permit, and a permit was issued March 19, 1963. The City's employee in effect stated he did not know or realize the project took in the north half of the alley. The plans included a wall about 10 feet high to be built next to the center of the alley, composed of open ornamental concrete blocks and backed by a solid panel wall. Construction was commenced about April 15, 1963, and by August 3, 1963, had reached the point where two concrete columns were standing on the north edge of the alley, supporting a concrete "folding plate" roof over the north half of the alley at the east end thereof. Also the stem wall had been poured for the wall

and the reinforced footing for a foundation at the west end was in place.

During the spring and summer of 1963 the plaintiff and Bank's agents discussed the the construction and various suggestions of plaintiff relative to the use of the alley. For one reason or another, not necessary to relate, none of these proposals were finally acceptable to either party. Admittedly, in March or April, 1963, after the plans and specifications had been prepared and the construction contract let, the plaintiff had threatened to sue the Bank. However, this was not done until August 7, 1963, when this action was filed. On August 3, 1963, the plaintiff removed the covered passage-way, previously built by him, with the exception of the brick column, cornice, and metal awning, that formed the entrance thereto. From the record it appears that this structure together with the structures and conditions described in the above paragraph were present at the time of the beginning of the trial on August 27, 1963. The "plate roof" that is supported by the two columns is one of a series of concrete panels approximately 5 feet by 35 feet that slants away from the center of the alley, so that the outside or south edge is about 12 to 14 feet above such center alley line.

The Bank presented other testimony that it relied upon plaintiff's statement that he had no objection to the Bank using the north half of the alley, as well as the presence of the plaintiff's covered way, and when it had procured plans to be prepared and entered into a construction contract and had caused construction to be partially made, all in conformity therewith and at considerable expense. Further testimony was that the Bank would not have so acted if plaintiff had not acquiesced or consented to its use of the north half of the alley. The Bank's witnesses placed the loss and expense, incident to removal of construction from the disputed area, as being about $9000 value of construction already made, plus cost of removal, and about $9000 to correct and rebuild within the boundaries of the Bank's property.

In his testimony the plaintiff, while admitting that he had talks with the Bank's agents and contractors regarding the type and method of constructing the wall the Bank intended to build along the alley center line, so as to have maximum light and air adjacent to his building, strongly denied any conversation wherein he stated he had no objection to the Bank using the north half of the alley. The tenor of his testimony is that such conversations, as well as those regarding his purchase of such strip of land and his suggestion that the Bank use the easterly portion of the alley and he use the westerly portion, was to resolve any controversy regarding use of the alley. He testified he objected to the Bank's use of the alley and particularly after he learned of the contemplated wall. He further testified that the Bank's architect, during the excavation for footings in the alley, requested permission to tear down plaintiff's wall, and that he gave permission. (As above stated, the plaintiff removed his wall.)

It is obvious that there was a conflict in the evidence and that the trial court resolved this conflict in favor of the Bank.

The Bank relies on laches and estoppel of plaintiff and upon equity to sustain the judgment. The respective contentions must be considered in light of well established rules of law.

In Smilie v. Taft Stadium Board of Control, 201 Okl. 303, 205 P.2d 301, it is stated:

"The granting or refusing of an injunction rests to some extent within the sound discretion of the trial court, and its order and judgment in refusing to grant an injunction will not be disturbed on appeal unless it can be said that the court abused its discretion or that the judgment rendered is clearly against the weight of the evidence."

And in Cloer v. Gillespie, Okl., 386 P.2d 1015, this court held:

"Courts of equity exercise discretionary power in the granting or withholding of their extraordinary remedies, and this is particularly true in a case where injunctive relief is sought. The relief is not given as a matter of course for any and every act done or threatened to the person or property of another; its granting rests in the sound discretion of the court to be exercised in accordance with well settled equitable principles and in the light of all of the facts and circumstances in the case."

Examination of the above statement of evidence discloses that there is competent and believable evidence that for a number of years prior to the date the Bank bought and began improving its property and the north half of the alley, the plaintiff had placed a concrete curb at the approach and had constructed and maintained what is considered as permanent improvements upon a major part of the south half of the alley and that such acts by the plaintiff evidenced his belief that he had the privilege or right to do this. Furthermore, that such acts of the plaintiff reflected at least an implied consent to the owner of the tract across the alley to use the north half of the alley in a manner different from the usual use of a public way. When these circumstances are supported by testimony, which the trial court evidently believed, that plaintiff stated he had no objection to the Bank's contemplated use, it was then reasonable for the trial court to conclude the plaintiff had consented that the Bank use the area now in dispute as a part of the Bank facility.

With the above as a background, there is sufficient other evidence to support the conclusion that plaintiff stood by and permitted the Bank to construct improvements at considerable expense and of major value that would be completely lost if the Bank was required to remove the same. In addition there is the fact that while the Bank was incurring this expense the plaintiff's improvement continued within the alley, and even after plaintiff removed the wall and roof thereof on August 3, 1963, there was left the brick column and cornice, and the metal awning.

Upon consideration of all the facts and circumstances it appears there is little, if any, aspect of the situation that would influence or be conducive to cause a court to exercise its equity powers in behalf of plaintiff, and that the trial court was similarly impressed and arrived at the same conclusion.

In Payne v. Jones, 193 Okl. 609, 146 P.2d 113, 118, we said that the power to issue injunctions should be exercised sparingly and cautiously, and only in cases reasonably free from doubt.

The plaintiff by both word and act delayed the assertion of any rights against the Bank and this worked to the disadvantage of the Bank. In May v. Archer, Okl., 302 P.2d 768, it was held as follows:

> "The question of whether a claim is barred by laches must be determined by the facts and circumstances in each case, and according to right and justice. Laches in legal significance is not merely delay, but delay that works a disadvantage to another."

It is a fundamental principle of equity jurisprudence that "He who comes into equity must come with clean hands." The judgment of the trial court is sustained under the view that the plaintiff has not come into court with clean hands. In Camp v. Camp, 196 Okl. 199, 163 P.2d 970 (196 Okl. 694, 170 P.2d 542, dissent) it is stated:

> "Equity will not lend its aid to one seeking its active interposition, who has been guilty of unlawful or inequitable conduct in the matter with relation to which he seeks relief."

In support of his claim that the judgment is erroneous the plaintiff states that, as an abutting owner, he has an interest in the alley as a public way and also a right that is personal to him, which he has a right to protect. Citing Hedrick v. Padon, Okl., 333 P.2d 552. Granting that the cited case so holds, still it is not applicable for the reason that the doctrine of equitable principles, "clean hands," and laches, were not involved or presented as a defense to the injunctive relief sought by the plaintiff in that case.

Plaintiff also cites Barnes v. Clark, Okl., 364 P.2d 693, as authority that he was not estopped by any of his previous inconsistent claims or acts relative to use of the alley. The case holds that an owner, whose application to vacate a street had been denied, was not thereby estopped to protest a later vacation of the street. The grounds for such holding was change of conditions and the fact that the owner was not successful in his earlier position. The decision is distinguishable in that it does not involve the factors present in the instant matter, and because estoppel is not the basis of our present decision.

The plaintiff further contends the Bank had no title in the alley that would validly permit it to place structures thereon and that the building permit issued by the City would not authorize a permanent use for private purposes. Citing authorities. We point out that the City did not ask for any affirmative relief and did not participate in the trial. Conceding the correctness of these rules of law, still, under the present circumstances the plaintiff did not show he was entitled to the extraordinary remedy of injunction against the Bank. The plaintiff and the Bank had both placed improvements in the alley and in this respect it may be said that they were both wrongdoers. In Cunningham v. McConnell, Okl., 382 P.2d 429, 433, we quoted from 30 C.J.S. Equity § 94, p. 478, as follows:

> " 'He who has done inequity shall not have equity * * * equity does not adjust differences between wrongdoers * * *.' "

It is our conclusion that the trial court did not abuse its discretion in refusing to grant the injunction and that the judgment is not clearly against the weight of the evidence.

Affirmed.