2009 OK CIV APP 105

**FINANCE & INVESTMENT CO., LTD., an Oklahoma limited liability company; Thomas O. Goldsworthy, an individual; Fremont Exploration, Inc., an Oklahoma corporation; and Fremont Investment Company, an Oklahoma corporation, Plaintiffs/Appellants,**

v.

**UMA, L.L.C., an Oklahoma limited liability company; Jacob Technologies, Inc., an Oklahoma corporation d/b/a Sabre Technology, Inc., Defendants/Appellees,**

and

**Saint Andrews Professional Park, Inc., an Oklahoma corporation, Defendant/Appellee,**

and

**The Greens Homeowners Association, Inc., a non-profit corporation, Third–Party Plaintiff.**

**Nos. 105,914, 105,963.**

Court of Civil Appeals of Oklahoma, Division No. 4.

May 18, 2009.

Certiorari Denied Oct. 12, 2009.

Allen Campbell, David Sturdivant, Kirk & Chaney, Oklahoma City, OK, for Plaintiffs/Appellants.

Robert Lee Rainey, Patricia A. Kirch, Joseph C. Schubert, Rainey Martin, LLP, Oklahoma City, OK, for Defendants/Appellees, UMA, L.L.C. and Jacob Technologies, Inc. d/b/a Sabre Technology.

Stephen L. Olson, Jeffrey I. Crain, Pierce Couch Hendrickson Baysinger & Green,

L.L.P., Oklahoma City, OK, for Defendant, Saint Andrews Professional Park, Inc.

JOHN F. FISCHER, Judge.

¶1 Finance & Investment Company, Thomas Goldsworthy, Fremont Exploration and Fremont Investment (collectively Finance), appeal from the district court's judgment granting the motions for summary judgment filed by UMA, L.L.C., Jacob Technologies, Inc. (collectively UMA), and Saint Andrews Professional Park, Inc. (Saint Andrews). The appeals have been consolidated and assigned to the accelerated docket pursuant to Oklahoma Supreme Court Rule 1.36(b), 12 O.S. Supp.2008, ch. 15, app. 1, and the matter stands submitted without appellate briefing. Based on our review of the record on appeal and applicable law, we affirm in part, reverse in part and remand for further proceedings.

## BACKGROUND FACTS

¶2 Finance and UMA are owners of real property located in Saint Andrews Professional Park (Park), and members of Saint Andrews. Property within the Park is subject to the property rights set out in the Amended and Restated Declaration of Conditions, Covenants and Restrictions for the Saint Andrews Professional Park dated September 26, 1996 (Declaration). The restrictive covenants in the Declaration provide that property within the Park "shall be used and occupied only for business, office, or medical purposes," and prohibit non-incidental manufacturing, industrial, warehouse and retail uses, among others. Declaration at ¶4. The owners of property within the Park agree that they shall strictly comply with the restrictive covenants. Declaration at ¶11. The recitation section of the Declaration provides that the "covenants, conditions, restrictions, use limitations, obligations, and provisions [of the Declaration] shall be deemed to run with the land" within the Park. Paragraph 26.5 of the Declaration provides that not only do the restrictive covenants "run with the land," but also that they "bind the [Park] and shall inure to the benefit of and be enforceable by [Saint Andrews] or any member."

¶3 In its amended petition, Finance alleges that UMA is conducting a business within the Park in violation of the restrictive covenants contained in the Declaration. Finance sued UMA and Saint Andrews, the property owners' association charged with enforcing the restrictive covenants in the Park. Finance's amended petition asserts two theories of recovery against UMA. First, Finance alleges that UMA's violations of the restrictive covenants in the Declaration "have created an annoyance and nuisance to the Plaintiffs" which has diminished the value of Finance's property and the value of its use and occupancy. Second, Finance contends that UMA has tortiously interfered with Finance's contracts, business and prospective economic advantage and the use and occupancy of Finance's property. Finance alleges that it has been damaged in excess of $10,000 and seeks a permanent injunction to abate UMA's alleged violations of the Declaration. Finance alleges that Saint Andrews has breached its duty to enforce the restrictive covenants in the Declaration. Finance also seeks damages in excess of $10,000 against Saint Andrews and an order directing Saint Andrews to enforce the restrictive covenants.

## STANDARD OF REVIEW

¶4 We review a trial court's grant of summary judgment *de novo*. *Carmichael v. Beller*, 1996 OK 48, ¶2, 914 P.2d 1051, 1053. On review, we examine the pleadings and evidentiary materials submitted by the parties to determine whether there exists a genuine issue of material fact. *Id.* This Court bears "an affirmative duty to test all evidentiary material tendered in summary process for its legal sufficiency to support the relief sought by the movant." *Copeland v. The Lodge Enters., Inc.*, 2000 OK 36, ¶8, 4 P.3d 695, 699. The summary process requires that we determine whether the record reveals only undisputed material facts supporting only a single inference that favors the movant's motion for summary judgment. *Id.* Further, when considering a motion for summary judgment, the evidence and the inferences to be drawn from the evidence must be viewed in the light most favorable to the party opposing

the motion. *Hargrave v. Canadian Valley Elec. Co-op., Inc.,* 1990 OK 43, ¶ 14, 792 P.2d 50. "Only if the court should conclude that there is no material fact in dispute and the law favors the movant's claim or liability-defeating defense is the moving party entitled to summary judgment in its favor." *Copeland,* 2000 OK 36 at ¶ 8, 4 P.3d at 699.

¶ 5 Finally, in reviewing summary judgment not only must we view all inferences and conclusions to be drawn from the evidentiary materials in the light most favorable to the party opposing the motion, but also once the movant has shown the absence of disputed material facts and entitlement to judgment on that record, the burden shifts to the defending party to show the existence of a triable issue. *Reeds v. Walker,* 2006 OK 43, ¶ 9, 157 P.3d 100, 106; *Hughey v. Grand River Dam Auth.,* 1995 OK 56, ¶ 8, 897 P.2d 1138, 1143. A party opposing summary judgment may not rely on appeal "on any fact or material that is not referred to or included" in the party's response to a motion for summary judgment. Okla. Dist. Ct. R. 13(b), 12 O.S. Supp.2008, ch. 2, app.

## DISCUSSION

¶ 6 The district court granted UMA's motion for summary judgment on three grounds: (1) The restrictive covenants in the Declaration constitute a contract, an action for the breach of which is subject to the five-year statute of limitations applicable to written contracts, and Finance knew or should have known more than five years prior to the filing of its suit about UMA's alleged covenant violations, therefore its claim was time barred; (2) UMA's business activities are lawful and cannot, therefore, create a nuisance; and (3) Finance has failed to establish a tortious interference claim because it has failed to prove any damage from lost profits, loss of contracts or loss of business relationships. As a result, the district court concluded that Finance had failed to show that it was entitled to monetary damages or injunctive relief. With the exception of the tortious interference issue, the grounds on which the district court relied in granting Saint Andrews's motion are the same.

## I. The Restrictive Covenant Claim

¶ 7 The facts relevant to the statute of limitations issue include letters written by or on behalf of Finance in late 1998 and mid-1999. These letters complain about truck traffic connected to the business operated by UMA in the Park. On the basis of this undisputed evidence, the district court concluded that the information known to Finance, as disclosed in those letters, was sufficient to start the running of the limitations period. In reliance on *Russell v. Williams,* 1998 OK CIV APP 135, 964 P.2d 231, the district court concluded that the restrictive covenants Finance sought to enforce constituted a contract subject to the five-year statute of limitations of 12 O.S.2001 § 95(1). Consequently, the court concluded that Finance's suit filed in April 2005 was filed beyond the time permitted by section 95(1) and, therefore, barred.

¶ 8 *Russell* decided a dispute between adjoining property owners arising from the encroachment of a structure onto the property of other land owners and its location beyond the set-back restrictions in restrictive covenants applicable to the property. The plaintiff sought removal of the structure from his property and attorney fees. It was undisputed that the encroachment had occurred more than five years prior to the filing of plaintiff's suit. The *Russell* court affirmed summary judgment on the breach of restrictive covenant claim because: "A covenant is in the nature of a contract and when a covenant is breached it confers the same right of action as for any other contract." *Russell,* 1998 OK CIV APP 135 at ¶ 7, 964 P.2d at 234 (citing *Ball v. Coyle,* 1925 OK 101, 108 Okla. 30, 233 P. 750).[1]

¶ 9 Although the *Russell* court applied a five-year statute of limitations to the breach of covenant claim, the fifteen-year prescription period was held to be the relevant period

---

1. The Court in *Ball* held that a covenant in an assignment of an oil and gas lease stating that the sellers had title to the lease with the right to sell it and that the lease was free of liens and encumbrances was not a warranty of title and could not defeat a mortgage recorded prior to the assignment. *Ball,* 1925 OK 101 at ¶ 4, 233 P. at 751.

regarding the encroachment claim. Because the plaintiff was not seeking damages for the encroachment, which the court found would have been barred by the two-year statute of limitations applicable to trespass claims, and because the evidence was not clear with respect to when the encroachment began, summary judgment in this respect was reversed.[2]

¶ 10 In this case, the district court concluded that Finance's claim for monetary damages resulting from breach of the restrictive covenants was subject to the five-year statute of limitations of 12 O.S.2001 § 95(1), and that the statute of limitations applicable to Finance's tortious interference claims was the two-year limitations period of 95 O.S.2001 § 95(3). Because we view the statute of limitations analysis differently than the *Russell* court, we find summary judgment improper.

■■■■ ¶ 11 The *Russell* court correctly states that a restrictive covenant is a contract enforceable as any other contract. However, that particular type of contract creates an interest in real property. "It has been said that a restriction arising from a restrictive covenant is not an estate in land, as is a legal easement, but is purely a creature of equity arising out of contract." *Van Meter v. Manion*, 1934 OK 615, ¶ 10, 170 Okla. 81, 38 P.2d 557, 559. As explained in *O'Neil v. Vose*, 1944 OK 26, 193 Okla. 451, 145 P.2d 411, relied on by Finance:

> [W]e are not unmindful of the legal right of owners of adjoining properties to bind themselves by enforceable contract, restraining the use of their property for an unlimited period of time, wherein each separate owner grants to the other owners a right in his property in the nature of an easement and which shall run with the land and be binding upon the several property owners as well as all future owners, who succeed to title with actual or constructive notice of such contract or agreement and its terms.

*Id.* at ¶ 14, 145 P.2d at 414. Although a restrictive covenant is to be interpreted to effect the intent of the parties,[3] the Declaration clearly establishes covenants that provide continuing obligations for owners of property within the Park, and those obligations may be enforced by Saint Andrews, the property owners, or their successors and assigns.

¶ 12 Finance has alleged that UMA violated the restrictive covenants beginning in 1998 and that the violations continue. We agree that Finance could have sued for the damages resulting from the alleged breach of the covenants in 1998 and that 12 O.S.2001 § 95(1) is the applicable statute of limitations to the breach of covenant claim. We do not agree that any claim for damages was barred five years thereafter, nor do we agree that Finance would be unable to enforce the covenants after that period of time. Because UMA's breach is alleged to be continuing, "the right to maintain an action for its breach continues so long as the breach continues and plaintiff is damaged thereby." *Indian Territory Illuminating Oil Co. v. Rosamond*, 1941 OK 410, ¶ 5, 190 Okla. 46, 120 P.2d 349, 352 (holding that an implied covenant in an oil and gas lease to protect the lessor from drainage was a continuing covenant and that an action for breach could be maintained beyond the limitations period although damages would be limited to the five years preceding the filing of the suit). *See also Bowman v. Oklahoma Natural Gas Co.*, 1963 OK 197, 385 P.2d 440.

---

**2.** The *Russell* court also held that the evidence failed to establish as a matter of law that the plaintiff's encroachment claim was barred by laches. Citing *Fairlawn Cemetery Ass'n v. First Presbyterian Church, U.S.A. of Oklahoma City*, 1972 OK 66, 496 P.2d 1185, the court concluded that the encroachment was a continuing trespass that the trial court could order removed. *Fairlawn* found that a dirt fill encroaching on the plaintiff's property was a trespass rather than a nuisance. Because suit was filed more than two years after the encroachment occurred, plaintiff's claim for damages to a fence caused by the dirt fill was barred by the two-year statute of limitations applicable to trespass claims. Nonetheless, the plaintiff was entitled to an injunction requiring the defendant to remove the dirt fill from the plaintiff's property.

**3.** *O'Neil*, 1944 OK 26 at ¶ 0, 145 P.2d at 411 (Syllabus 2). The parties do not dispute the interpretation and meaning of the Declaration. Their dispute is confined to whether the activities of UMA violate the terms of the Declaration.

¶ 13 *O'Neil* requires the same analysis. The property owners in *O'Neil* successfully enforced restrictive covenants limiting the affected property to residential use.[4] Although the non-conforming use had begun more than ten years prior to the filing of the plaintiffs' suit, the defendants' statute of limitations argument was specifically rejected:

> [C]ovenants restricting the use of property are generally held to be covenants running with the land, . . . such covenants are binding upon the successors in interest to the parties, although there was no privity of interest between such successors and the original parties. The portion of the restricted agreement would be as binding upon subsequent owners as on the original parties to the agreement.

*O'Neil*, 1944 OK 26 at ¶ 29, 145 P.2d at 417.

¶ 14 From these authorities, it is clear that restrictive covenants, although created by private contract, create an interest in the property affected. That property interest is protectable as are other property interests. Consequently, an action to enforce restrictive covenants is an equitable action, which may be subject to equitable defenses,[5] but it is not subject to a statute of limitations defense. Nonetheless, the applicable statute may limit the time period for which monetary damages may be recovered.

¶ 15 Regarding UMA's use of its property, the facts are in dispute. The truck traffic generated by UMA's business operations and the nature of the business conducted by UMA may or may not violate the Park restrictive covenants, therefore, Saint Andrews may or may not have a duty to enforce those covenants. The district court made no find-

ing as to those issues and they cannot be resolved through the summary judgment procedure on the basis of this record. However, if UMA's conduct does violate those covenants, Finance may be entitled to injunctive relief requiring UMA's compliance with the covenants, subject to any laches or other equitable defense asserted by UMA and/or Saint Andrews.

## II. The Nuisance Claim

¶ 16 In addition, Finance has alleged that UMA's operations have created a nuisance. That circumstance may exist regardless of whether UMA is operating a business in violation of the restrictive covenants, and the fact that UMA's business operations are otherwise lawful does not determine that issue. *See Big Four Foundry Co. v. Hagens*, 1946 OK 201, 197 Okla. 409, 172 P.2d 322 (holding that negligent operation of an otherwise lawful business may constitute a nuisance). Title 50 O.S.2001 § 1 defines a nuisance:

> A nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either:
>
> First. Annoys, injures or endangers the comfort, repose, health, or safety of others;
>
> . . .
>
> Fourth. In any way renders other persons insecure in life, or in the use of property. . . .

For example, the operation of an otherwise lawful sanitation plant but with insufficient capacity or inadequate procedures may constitute a nuisance. *See Theatre Estates, Inc. v. Village*, 1969 OK 183, 462 P.2d 651. Like-

---

4. During oral argument on the summary judgment motions, UMA sought to distinguish *O'Neil* because one of the covenants prohibited the leasing of servants quarters to "parties of African descent." Clearly that aspect of the restrictive covenants would be unenforceable. *Barrows v. Jackson*, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953). That fact, however, does not undermine the authority of the opinion with respect to its analysis of restrictive covenants, the manner in which they are created, the effect of restrictive covenants on real property interests, and the holding of the opinion affirming a permanent injunction enforcing a restrictive covenant preventing the operation of a boarding house in a residential area.

5. In addition to the statute of limitations defense, the defendants' laches defense was rejected in *O'Neil* as well. The property owners only sought to prevent the continued use of the property in violation of the restrictive covenants, rather than to enjoin the maintenance of improvements erected in violation of the covenants or to recover monetary damages for the violation. The defendants did not show that they were surprised or would suffer injury because of the plaintiffs' delay in bringing their suit. Consequently, the defendants failed to prove their laches defense and the trial court's injunction was affirmed.

wise, operation of a salvage yard business, though "of itself lawful," may constitute a nuisance. *Winningham v. Rice,* 1955 OK 108, ¶ 7, 282 P.2d 742, 744. UMA has a duty to comply with the restrictive covenants. Declaration at ¶ 11. Its failure to perform that duty may constitute a nuisance. Finance may sue for damages and/or abatement of a private nuisance. 50 O.S.2001 §§ 13–14.

¶ 17 *Smilie v. Taft Stadium Board Of Control,* 1949 OK 42, 201 Okla. 303, 205 P.2d 301, relied on by UMA and Saint Andrews, does not stand for the proposition that a lawful business or the traffic associated with it can never constitute a nuisance. In *Smilie,* the Supreme Court distinguished between a nuisance per se and a nuisance in fact. It being conceded that the operation of the race track was not a nuisance per se, the question on appeal was whether the trial court's determination, on the basis of conflicting evidence, that the home owners had failed to prove that the noise produced by race track operations during a limited time period constituted a nuisance was against the weight of the evidence. The Supreme Court concluded it was not and affirmed the trial court's denial of an injunction. *Smilie* shows that summary judgment on the nuisance issue in this case was improper because the nature and affect of UMA's operations and associated truck traffic is disputed.

¶ 18 With respect to the traffic issue, *Smilie* is distinguishable. The race track owners had "no authority or control over the streets of the city nor [had] they any power to regulate or prohibit parking thereon." *Id.* at ¶ 17, 205 P.2d at 305. Here, the parties do have some control by virtue of the restrictive covenants. *See, e.g.,* Declaration at ¶ 4.5. These parties have granted each other a mutual interest in the other's property by private contract to avoid the "plagues of city dwellers" by forming the Park and restricting within its boundaries the flow of traffic otherwise permitted on public streets. *Id.* at ¶ 18, 205 P.2d at 305.

¶ 19 We find *Moneypenney v. Dawson,* 2006 OK 53, 141 P.3d 549, more directly on point. That case held it was error to dismiss a land owner's petition based on the statute of limitations because it was unclear whether the water damage resulting from the defendant's alleged alteration of the natural water drainage was permanent or temporary. "As a general proposition, '[w]hen a cause of an injury is abatable either by an expenditure of labor or money, it will not be held permanent.' Further, both temporary and permanent damage may be caused or arise from a temporary, *i.e.,* abatable nuisance or trespass." *Id.* at ¶ 9, 141 P.3d at 553 (citations omitted). *See also N.C. Corff Partnership, Ltd. v. OXY USA, Inc.,* 1996 OK CIV APP 92, ¶ 15, 929 P.2d 288, 293 (correctly stating, according to the Supreme Court in *Moneypenney,* the general rule that the two-year statute of limitations applicable to actions for temporary damages resulting from a nuisance does not bar the action but only recovery of damages occurring more than two years prior to filing of the suit).

¶ 20 The evidence is conflicting as to whether UMA's trucking operations rise to the level of a nuisance. Consequently, Finance's nuisance claim cannot be resolved on summary judgment.

### III. The Tortious Interference Claim

¶ 21 The facts are not in dispute with respect to Finance's claim for tortious interference with contract and tortious interference with prospective economic advantage. As Finance concedes in its response to UMA's motion for summary judgment, Finance "cannot show any lost contracts or lost profits." The existence of a contract or business relationship is an element of the first claim,[6] just as the existence or expectation of a valid business relationship is an element of the second.[7] The authorities relied on by Finance with respect to this issue support its nuisance claim and the method by which it can establish damages related to that claim. They do not establish that one claiming tortious interference with a contract or prospective business advantage is relieved from

---

**6.** *See Mac Adjustment, Inc. v. Prop. Loss Research Bur.,* 1979 OK 41, 595 P.2d 427.

**7.** *See Boyle Servs., Inc. v. Dewberry Design Group, Inc.,* 2001 OK CIV APP 63, 24 P.3d 878.

proving the existence of a contract or the expectation of a business relationship. The district court correctly granted UMA's motion for summary judgment in this respect.

## CONCLUSION

¶ 22 The judgment of the district court with respect to Finance's tortious interference claim is affirmed. In all other respects, the judgment is reversed, and this case is remanded for further proceedings consistent with this Opinion.

¶ 23 **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.**

GABBARD, P.J., and RAPP, J., concur.