2004 OK CIV APP 63

**The OAKS OWNERS' ASSOCIATION, INC., Plaintiff/Appellee,**

v.

**Robert J. KEIM, M.D. and Arlene Keim, Defendants/Appellants.**

No. 99,684.

Court of Civil Appeals of Oklahoma, Division No. 3.

July 16, 2004.

G. Neal Rogers, Dunlap, Codding & Rogers, P.C., Oklahoma City, OK, for Appellants.

Sheldon B. Swan, Dunn, Swan & Cunningham, Oklahoma City, OK, for Appellee.

Opinion by LARRY JOPLIN, Judge.

¶1 Defendants/Appellants Robert J. Keim, M.D., and Arlene Keim (collectively, the Keims) seek review of the trial court's order granting judgment to Plaintiff/Appellee The Oaks Owners' Association, Inc. (Association) in the Association's action to compel removal of a fence which Association maintains encroaches on its property. Having reviewed the record, the cause is remanded for further proceedings.

¶2 In February 1985, Robert E. Montgomery and John W. Mayes (collectively, Montgomery), as owners and developers of property in Oklahoma County, by plat created The Oaks 1st Addition (Oaks1). Later that same month, Montgomery formed The Oaks Owners' Association, Inc. (Association), an Oklahoma corporation/homeowners' association. In May 1985, Montgomery filed a Declaration of Covenants, Conditions and Restrictions (CCRs), charging the Association with the duty, obligation and authority to maintain the common areas within Oaks1 for the use and benefit of its residents, and

making membership in the Association mandatory.

¶ 3 Earl Austin Construction Co. (Developer) subsequently acquired Montgomery's interest in Oaks1 and other contiguous parcels. In January 1989, Developer—as Vice–President, with Patricia C. Austin, Secretary, and David E. Austin, President, "being all the Directors of [Association]"—adopted and published Association by-laws, providing for residents' mandatory membership in the Association upon purchase of property within the subdivision, and Association's ownership of and obligation to maintain the common areas of the subdivision for the use and benefit of the member/residents.

¶ 4 In March 1989, consistent with his intent to further develop the property, Developer filed Amended CCRs. The amended CCRs reserved to Developer "the right to establish within the Common Elements future easements, reservations, exceptions, and exclusions consistent with the ownership of [the Oaks] and for the best interests of the Lot Owners and the Association in order to serve [all of the Oaks]." More specifically, the amended CCRs granted to Developer—and Association as Developer's successor—the power and authority:

> To grant one or more lot owners ... the right to use exclusively so much of the Common Elements contiguous to lots owned by such grantees as the Association may deem *inappropriate* for use as Common Elements under such conditions as

the Association deems satisfactory, including the duty on the part of the grantee to maintain the area so granted.

(Emphasis added.) Developer testified in deposition he intended the amended CCRs to also apply to property to be developed as The Oaks 2nd (Oaks2). The amended CCRs required the recordation of a "Supplementary Declaration" within seven years in order to bring Oaks2 within the scope of its provisions,[1] but, for whatever reason, Developer did not timely file such a "Supplementary Declaration."

¶ 5 In 1990, Developer submitted to municipal authorities a plat for Oaks2. As a prerequisite for approval, the Oklahoma City Planning Commission required Developer to establish certain common areas—in and around a "floodway" designated by the City of Oklahoma City—to be owned and maintained by a property owners association comprised of all owners in the subdivision. Accordingly, the approved and recorded plat provided, in pertinent part:

> [S]aid property covered by this plat and this dedication are (sic) subject to certain restrictions, reservations and covenants *contained in a separate instrument which may be filed subsequent to filing of the plat.*

> That Blocks C, D, E, and F, as shown on the annexed plat, are the common Areas to be owned by a Property Owner's Association comprising all lot owners within the

---

1. In this respect, the amended CCRs provided:

   24. *Expandable Nature of the Real Estate Development.* The real property described on Exhibit "A–1" [i.e., including the property to be developed as Oaks2] may be annexed to and become subject to this Declaration as set forth hereinafter in this section.

   24.1 *Development of the Covered Property.....* [S]uch property shall not become subject to this Declaration unless or until a Supplementary Declaration shall have been so executed and recorded,....

   24.2 *Supplementary Declaration.* A Supplementary Declaration shall be a writing in recordable form which annexes all or portions of the property described in Exhibit "A–1" to the plan of this Declaration, incorporates by reference all of the covenants, conditions and restrictions of this Declaration and contains such other provisions as set forth in this Declaration relating to Sup-

   plementary Declarations. ... Provided, however, Declarant shall not execute and record any such Supplementary Declaration pursuant to this section more than seven (7) years subsequent to the recordation of this Declaration.

   24.3 *Annexation Without Approval.* Upon the execution and recordation of a Supplementary Declaration covering all or a portion of the real property described on Exhibit "A–1," said real property and Owners of Units therein will become subject to the functions, powers, and jurisdiction of the Association without the approval, assent or vote of the Association or its then existing members. The plan of this Declaration shall be extended to said real property, and all of the Owners of Units in said real property shall, pursuant to paragraph 6 herein, automatically be members of the Association and entitled to representation in the Association.

entire Oaks addition which includes the above shown platted area. Said Common Areas shall be reserved for the private use of the Property Owner's Association and for drainage facilities. Said Property Owner's Association is charged with the responsibility of maintaining all drainage swales and Common Lots as may be required by the City of Oklahoma City.

(Emphasis added.)

¶ 6 In 1992, the Keims contracted to purchase a home within Oaks2. As part of the purchase, the Keims purportedly bargained for, and Developer—as "Declarant" for the Association—purportedly granted to the Keims *exclusive use of a portion of Common Lot E adjacent to the Keims' property.* Association averred the Keims were provided copies of the Association by-laws and the Amended CCRs at closing of the sale; the Keims admitted they knew of the existence of the Association at the time they closed on the purchase of their home, but denied receipt of copies of those documents until after this dispute arose.

¶ 7 Apparently, Developer maintained control of Association until 1993 when control and operation of Association was turned over to the residents. Over the ensuing years, the Keims paid Association dues and improved the common area adjacent to their lot.

¶ 8 In 1998 or 1999, the Keims enclosed a portion of the improved common area with a fence. Association subsequently demanded removal of the fence as an encroachment upon a common area owned by it. The Keims refused.

¶ 9 In October 1999, Association commenced the present action, seeking to compel the Keims to remove the fence. The Keims answered, denying Association's authority over any property located in Oaks2, and asserted counter-claims, seeking an accounting and restitution of Association dues collected without authority.

¶ 10 In December 1999, Association filed a motion for summary judgment, attaching copies of the plats of both Oaks1 and Oaks2, as well as the original and amended CCRs. Association also offered deposition testimony of Dr. Keim, admitting: he did not own the common area adjacent to his lot; he knew Association existed at the time he purchased his property; he had paid Association dues since his purchase; and he knew the CCRs and Association by-laws applied to him. Under these circumstances, said Association, the Keims could not avoid or deny its authority over the common area.

¶ 11 In April 2000, the Keims filed a response, objecting to Association's motion for summary judgment, and asserted a counter-motion for summary judgment in their favor. To their response/counter-motion, the Keims attached an affidavit of Developer to the effect that the Keims' improvements to the common area were consistent with the right to exclusive use granted to them by Developer at the time they purchased their property,[2] and that in the absence of a properly filed "Supplementary Declaration" or other separate instrument bringing the lots in Oaks2 within the ambit of the amended CCRs and the authority of Association, title to the common areas remained in Developer. So, said the Keims, because Developer: granted them exclusive use of the common lot adjacent to their property; never conveyed title to the Oaks2 common areas to Association; and did not timely file the Supplementary Declaration making the Oaks2 subject to the amended CCRs (and, consequently, Association's authority) within seven years,[3] Association had no authority over the lots and common areas of Oaks2.

¶ 12 Association filed a reply, attaching Developer's affidavit recanting his assertion of title to the Oaks2 common areas, and admitting that title to the common areas lay in Association pursuant to the Oaks2 plat.

---

**2.** The record includes a copy of a February 1999 letter from Developer to the Keims confirming that, at the time the Keims purchased their property, "the exclusive use of the said common area was granted to you" by Developer "as Declarant of the [Association]."

**3.** The record also includes a copy of a November 1999 letter from Developer to "all Oaks II Homeowners," asking them to execute CCRs making "Oaks II covenants the same as Oaks I."

Association thus reasserted its ownership of and authority over the Oaks2 common areas.

¶ 13 Upon consideration of the arguments and submissions in the present case, the trial court granted the motion for summary judgment of Association in June 2001, and the Keims appealed. *The Oaks Owners' Association, Inc. v. Keim,* Case No. 96,539 (Ok.Civ. App.Div. III, October 26, 2001.) (*Keim I*). By unpublished opinion, the Court of Civil Appeals reversed and remanded for further proceedings, concluding there existed material facts in controversy:

> .... It appears from the uncontroverted facts in this case, the homeowner's association may or may not exist as to Oaks 2nd. Prior to the commencement of this action, the document creating the association and establishing the restrictions and covenants which would "run with the land" had not been filed. Since that time, the formation of an association was attempted, but not "all owners of the real property" had executed a document creating such an association; Keims being the notable exception. Keims may or may not have had actual knowledge of the association when they purchased their property. They may or may not be bound by the unrecorded document. What right, if any, do they have to control and use the fenced area?
>
> There are other material facts in controversy regarding many issues in this matter. Among those issues: do Owners have standing to bring this action; did the developer have the right to grant exclusive use of the adjacent lot to Keims; was that right vested in some way in Owners? What is the effect of an oral easement?....
>
> ....
>
> .... From our review of the record, there are material facts in controversy. Neither party was entitled to judgment as a matter of law. Summary judgment was improper.

*Keim I,* pp. 4–5, ¶¶ 5–7. Mandate issued and was spread of record below in late November

2001. In December 2001, the trial court consolidated the present case with a related case for purposes of hearing only.[4]

¶ 14 In May 2002, Association filed a motion to enter, seeking a non-jury trial. The trial court entered a scheduling order, and set a pre-trial conference for August 2002.

¶ 15 However, pre-trial conference was stricken, and the trial court directed the parties to submit a joint stipulation of facts, and proposed findings of fact and "final contentions of law." The parties stipulated:

1. February 7, 1985—Montgomery and Mayes filed Plat for Oaks 1st to subdivide a portion of the original parcel, now referred to as The Oaks 1st subdivision.

2. Feb. 25, 1985—[Association] formed. Certificate of Incorporation filed.

3. May 9, 1985—[CCRs] filed by Montgomery to maintain the common areas within The Oaks 1st Addition.

4. Montgomery executed a Deed in Lieu of Foreclosure to his interest in The Oaks subdivision to certain institutional mortgage lenders, who in turn sold their interest in The Oaks 1st subdivision to [Developer]. [Developer] then became owner of the parcels of land, now referred to as The Oaks 1st subdivision and The Oaks 2nd subdivision.

5. March 24, 1989—Amended [CCRs] filed by [Developer].

6. Oct. 2, 1990—[Developer] filed Plat for Oaks 2nd to sub-divide the additional portion of the original parcel, now referred to as The Oaks 2nd subdivision.

....

8. October 22, 1992—Keims purchased home within The Oaks 2nd subdivision. Common Lot E contains property adjacent to the property of the Keims.

9. October 23, 1992—Warranty Deed issued to the Keims.

....

---

**4.** In January 2001, another resident of Oaks2 commenced an action against Association in the Oklahoma County district court. *Knight v. The Oaks Owners' Association, Inc.,* CJ–2001–247. In that suit, Knight—subsequently joined by other Oaks2 homeowners—challenged Association's right, power and authority to collect dues and enforce any CCRs affecting property within Oaks2.

13. May 2, 1998—[Association] sent letter to Keims requesting that they remove the fence they erected in the common area.[5]

¶ 16 Association filed "Plaintiff's Final Contentions and Proposed Conclusions of Law," setting out facts and legal authority supporting judgment in its favor based on the conclusion that the Oaks2 plat, filed of record, imparted to the Keims actual and/or constructive notice both of the CCRs and the conveyance of the Oaks2 common areas to Association, as well as the duties and obligations of Association membership, with which the Keims had complied. Alternatively, Association maintained that the facts demonstrated an enforceable implied easement for use of the common areas of Oaks2.

¶ 17 The Keims submitted proposed "Contentions of Law," specifically stating the contentions were *not* to be construed as "renewals or extensions of prior motions for summary judgment ..., waiver of their right to trial, consent to trial to the court only, or consent to trial to the court on the written record."[6] The Keims set out facts and legal authority argued to support judgment in their favor because (1) Association had no standing to enforce the unfiled CCRs bringing Oaks2 within the scope of its authority; and (2) the Keims purchased their property without notice of and unburdened by the Association by-laws and amended CCRs for (a) lack of the timely filed "Supplementary Declaration" anticipated by the amended CCRs to grant the Association the power and duty to maintain the common areas of Oaks2; and (b) lack of any restrictions or reservations on the face of their deed. The Keims also argued the "law of

the case" stated by the Court of Civil Appeals controlled.

¶ 18 On consideration of the parties' submissions, the trial court determined to grant judgment to Association, and, on Association's motion to settle journal entry, granted judgment according to Association's proposed findings and conclusions.[7] By post-judgment order, the trial court also granted attorney's fees and costs to Association. The Keims appeal, and the matter stands submitted for accelerated review on the trial court record.[8,9]

¶ 19 The Keims challenge Association's attempted exercise of authority over the common area adjacent to their lot as contrary to the specific terms of the amended CCRs which required Developer's filing of a "Supplementary Declaration" within seven years to bring Oaks2 within the ambit of the amended CCRs and Association's authority. The Keims further allege the trial court erred in construing the amended CCRs as applying to Oaks2 because (1) the amended CCRs impart no notice of their application to Oaks2; and (2) such a construction impermissibly substitutes the amended CCRs for the "Supplementary Declaration" required to bring Oaks2 within the Association's authority, and impermissibly substitutes Association as the "property owners association" required by the Oaks2 plat.

¶ 20 In the present case, while the trial court *appears* to have weighed the evidence and made findings of fact, it did so without a hearing, trial or receipt of evidence, and in spite of the Keims' objection to any summary disposition. Despite the appearance of a full hearing and trial, the trial court in reality ruled summarily in this case.

5. Stipulation Nos. 7, 10, 11 and 12 deal with the owner/resident/plaintiffs in the related case and have no bearing on resolution of this case.

6. The record also contains correspondence between counsel for the Keims and the Court, where the Keims specifically objected to any disposition "as a substitute for trial on the merits."

7. In support of and opposition to the motion to settle, the parties offered copies of correspondence between counsel for the Keims, the Appel-

lants and the Court, in which both the Keims and the Knight plaintiffs objected to the summary disposition of the case.

8. The Keims dismissed all their counter-claims without prejudice.

9. Concurrently with this opinion, we have issued an order denying the Keims' Motion to "re-file" their untimely amended petition in error by which they sought review of the trial court's post-judgment award of attorney's fees and costs to Association.

¶ 21 The only procedure for the summary adjudication of claims is set out by District Court Rule 13, 12 O.S., Ch. 2, App. Rule 13(e) permits the summary adjudication of claims only where the uncontroverted facts demonstrate one party's entitlement to judgment as a matter of law.[10] When considering the summary adjudication of claims, all evidence and inferences must be viewed in the light most favorable to the opposing party. *Oliver v. Farmers Ins. Group of Companies,* 1997 OK 71, ¶ 6, 941 P.2d 985, 987; *Seitsinger v. Dockum Pontiac Inc.,* 1995 OK 29, ¶ 7, 894 P.2d 1077, 1079. On summary judgment, the court may not weigh the evidence, but may only review the evidence to determine whether there is a factual dispute. *Oliver,* 1997 OK 71, ¶ 6, 941 P.2d at 987; *Flanders v. Crane,* 1984 OK 88, ¶ 10, 693 P.2d 602, 605. If reasonable people might differ on the conclusions to be drawn from the facts, the matter may not be summarily adjudicated. *Oliver,* 1997 OK 71, ¶ 6, 941 P.2d at 987; *Northrip v. Montgomery Ward and Co.,* 1974 OK 142, ¶ 12, 529 P.2d 489, 493. In the present case, the trial court granted judgment on a procedure outside the reach of Rule 13.

■ ¶ 22 The trial court in the present case summarily granted judgment to Association on much the same record and facts submitted in *Keim I*—the record from which the Court of Civil Appeals previously identi-

fied material facts in controversy. We discern the same factual controversies in the present case as did the Court of Civil Appeals in *Keim I,* particularly concerning: the existence of a homeowner's association as to Oaks2; the extent to which the Keims, as purchasers of property within Oaks2, knew or should have known of the amended CCRs; and/or whether the Keims were bound by the amended CCRs, although intended to apply to Oaks2, in the absence of a timely filed "Supplementary Declaration" bringing Oaks2 within the amended CCRs' reach.[11] The parties' post-remand stipulations do not resolve any of these controverted issues of fact. Faced with the same set of controverted facts, it was error for the trial court to again summarily grant judgment to Association.

■ ¶ 23 Indeed, the appellate adjudication of the existence of material facts in controversy precludes a contrary conclusion on the same facts after remand. *Tillery v. Oklahoma Farm Bureau Mut. Ins. Co.,* 1992 OK CIV APP 78, ¶ 5, 847 P.2d 819, 820.[12] This is so because "[t]he law-of-the-case doctrine ... prevent[s] the re-litigation of issues already decided" to appellate finality:

> Decisions made in an earlier appeal are the law of the case as to the issues resolved therein. Once an appellate court decision is final, it is binding in all subsequent stages of the case. 'NO question

---

10. Where the evidentiary materials show "no substantial controversy as to any material fact and that one of the parties is entitled to judgment as a matter of law, the court shall render judgment to said party whether or not he is the moving party."

11. Developer testified he intended that the amended CCR's, specifically applicable to Oaks1, also apply to Oaks2. However, the question of Developer's intent concerning the reach of the amended CCRs presents a question of fact for determination by the trier of fact. *See, K & K Food Services, Inc. v. S & H, Inc.,* 2000 OK 31, ¶ 15, 3 P.3d 705, 710–711 ("... Material to the question of intent are facts relating to the circumstances surrounding the indenture's execution, and the intent of the original parties and the construction they placed on the indenture. Whether a use of an appurtenant easement is reasonable is a question of fact. Even if the original parties to the indenture intended to require access only at some point along the property line, the parties dispute whether the hotel's curb obstructs the entire property line or if it does allow reasonable access at some point along

the property line. The evidentiary materials presented by the parties are not dispositive of the material questions of fact concerning wh[at] the makers of the indenture intended ....")

12. "The first issue ... raised by [defendant/appellee] in its first and second motions for summary judgment, and upon which the Trial Court could have based its order granting same, has been specifically addressed by the Court of Appeals in ... the prior appeal in this case. In its opinion in the prior appeal, the Court of Appeals found 'a material issue of fact exists as to whether [defendant/appellee] has, in bad faith, deprived [plaintiff/appellant] of "the fruits of his own labor," ' 'i.e., loss of retirement, employment, fringe benefits, and lost commissions and wages,' and that finding stands as law of the case, binding on the Trial Court on remand. The Trial Court therefore erred in apparently holding contrary thereto on subsequent summary judgment, and the Trial Court's order should be reversed."

expressly decided or impliedly determined on a former appeal can be reversed on a second appeal between the same parties in regard to the same subject matter.' When an issue has been presented to the Court of Appeals, and a decision reached on that issue, the first determination becomes conclusive and cannot be re-examined once it is final. The sole remedy available from an erroneous decision of that Court is the writ of certiorari.

*McMinn v. City of Oklahoma City*, 1997 OK 154, ¶ 25, 952 P.2d 517, 523–524.

¶ 24 After remand, the record before the trial court was exactly the same as before the appeal, except for the thirteen joint stipulations of fact. Those stipulations primarily dealt with the chronology of events, and did nothing to resolve *any* of the controversies of material fact which the Court of Civil Appeals had identified. The Court of Civil Appeals' determination precluded the trial court's grant of what amounted to a second summary judgment *on the same facts* after remand.

¶ 25 Finally, the Keims also allege that the Court of Civil Appeals preclusively determined the amended CCRs affecting Oaks 2 had not been filed; and, that formation of an association for Oaks2 had been attempted but that all Oaks2 property owners had not consented as required by 60 O.S. § 852. However, the Court of Civil Appeals previously decided *only* whether there existed material facts in controversy as to preclude the grant of summary relief. Any statements by the Court of Civil Appeals *beyond the identification of controverted material facts* were unnecessary to the decision, should be considered as mere orbiter dictum, and do not control in the subsequent proceedings. *See, e.g., American Trailers, Inc. v. Walker*, 1974 OK 89, ¶ 18, 526 P.2d 1150, 1154.[13]

¶ 26 The order of the trial court granting judgment to Association is therefore RE-VERSED, and the cause REMANDED for further proceedings.

HANSEN, J., and MITCHELL, P.J., concur.

---

13. "Statements in a decision neither necessary to support the conclusion reached nor applicable to the situation are dictum, and not in any way controlling."