738

**SANDITEN INVESTMENTS, LTD., a limited partnership, Plaintiff in Error,**

v.

**G. A. TOMLINSON, Jr., Joan Y. Tomlinson, Norbert H. Miller, Elizabeth Ann Miller, James Leroy Mitchell, Mildred D. Mitchell, R. Houston Wilkerson, and Mariana Wilkerson, Defendants in Error.**

No. 41764.

*Supreme Court of Oklahoma.*

Dec. 3, 1968.

Rosenstein, Mesirow, Livingston, Fist & Ringold, Tulsa, for plaintiff in error.

William A. Harrington, Tulsa, for defendants in error.

BLACKBIRD, Justice.

This appeal involves the interpretation, and enforcement, of restrictive covenants covering two vacant parcels of land in the NE¼ of the NW¼ of Section 33, Township 19 North, Range 13 East, in Tulsa County, that will be referred to herein as Lots "B" and "C".

In 1954, a Mr. and Mrs. North, who then owned this real estate and some other land in the same forty-acre tract, entered into a written agreement with the owners of adjoining land in said tract, entitled: "AGREEMENT Re RESTRICTIONS". Said agreement recited that " * * * for the purpose of providing an orderly development of said real estate for the mutual benefit of ourselves and our successors in title. * * * " the parties impose "the

following restrictions, benefits and burdens on said real estate:

"1. No noxious or offensive trade or enterprise shall be carried on upon said real estate, nor shall anything be done thereon which may be or become an annoyance or nuisance to the neighborhood.

"2. Only single family dwellings having a minimum ground floor square foot living area of 1200 square feet shall be permitted on said real estate. Dwellings now located on the real estate are specifically excepted.

"3. These covenants and restrictions are to run with the land and shall be binding on all owners, their successors or assigns or persons claiming under them until January 1, 1980, at which time said covenants shall terminate.

"4. If any of the parties hereto, or any of them, or their successors or assigns shall violate or attempt to violate any of the covenants or restrictions herein before January 1, 1980, it shall be lawful for any person or persons owning any of the other of said real estate to prosecute any proceeding at law or in equity against the person or persons violating or attempting to violate any such covenant or restrictions and either to prevent or enjoin him or them from so doing to recover damages or other appropriate compensation for such violation."

Years later, plaintiff in error, hereinafter referred to as "defendant", acquired Lots "B" and "C", as well as other land across the street from them, that we will refer to as tract "A". Defendant was thereafter successful in obtaining, through Tulsa City authorities, the rezoning of tract A for the construction of a shopping center thereon, and announced its intention to convert Lots B and C into an automobile parking lot of a character indicated as follows:

"(a) Said parking lot will not be available for use by the general public, but will be limited to use by employees of the tenants of the shopping center to be located to the west of the plaintiffs' properties. Said parking lot will be used by such employees only during normal business hours of the shopping center; a sign will be displayed prohibiting blowing of horns on said property;

"(b) The said parking lot will be hard-surfaced to eliminate dust; no ingress or egress to said parking lot shall be permitted except from defendant's property on the west;

"(c) The lighting in said parking lot will be of a minimum candlepower consistent with safety requirements and will be reflected downward;

"(d) Said parking lot will be separated from plaintiffs' properties by a wall, fence or hedge of suitable height to screen said parking lot from plaintiffs' properties; the parking area will be landscaped in an attractive manner; and

"(e) Said parking lot will be maintained at all times in a proper manner, and trash, rubbish and debris will not be permitted to accumulate thereon."

Thereafter, defendants in error, hereinafter referred to as "plaintiffs", being the present owners of homes constructed on lots adjoining defendant's property, and carved out of land covered by the above described restrictive covenant agreement, in like manner as Lots B and C, instituted the present action against defendant on the theory that its proposed use of those lots for the planned parking area would violate the restrictive covenants contained in the above quoted agreement. Plaintiffs alleged, among other things, that they relied upon the restrictive covenants at the time they purchased their properties, and that the violation of these covenants will impair and decrease the value of same, create a nuisance to the neighborhood, and be offensive to the continued use of their property as single family dwellings. Plaintiffs prayed the court to enjoin defendant from violating the restrictive covenants referred to, and sought other relief unnecessary to mention.

In its answer and cross-petition, defendant, in material substance, denied that its proposed use of the subject lots, in the man-

ner hereinbefore indicated, will violate the restrictive covenants involved, and prayed for a declaratory judgment to that effect.

After plaintiffs had filed a reply which, among other things, contained a qualified general denial, the cause was submitted to the court at a hearing, wherein plaintiffs interposed an oral demurrer to defendant's answer and cross-petition. In its order sustaining said demurrer, the court indicated that it interpreted the hereinbefore quoted restrictive covenants as prohibiting Lots B and C from being used as a parking lot, as proposed by defendant, notwithstanding the opinion of this court in Buck v. Dunn, Okl., 275 P.2d 296, which defendant evidently invoked in support of its position.

Thereafter, when defendant elected to stand on its answer and cross-petition, the court entered judgment granting plaintiffs the injunction they sought. After the overruling of its motion for new trial, defendant perfected the present appeal on original record.

In the first two propositions defendant advances for reversal it perseveres in its position that the trial court's judgment is contrary to Buck v. Dunn, supra, and to the principles governing restrictions on the use of land applied there and in the cases of Trotter v. Loum, Okl., 321 P.2d 651; Schwartz v. Hubbard, 198 Okl. 194, 177 P.2d 117; Magnolia Petroleum Co. v. Drauver, 183 Okl. 579, 83 P.2d 840, 119 A.L.R. 1112 and Christie v. Lyons, 173 Okl. 158, 47 P.2d 128. It urges, in effect, that under the authorities supporting strict construction of restrictive covenants, and, since those involved here mention no prohibited use of the lots, except those uses described in general terms in paragraph "1" of the hereinbefore quoted covenants, that paragraph "2" thereof should be interpreted as describing only *the type of dwellings that can be constructed* on the lots. Defendant maintains that, since it does not propose to build a dwelling, its use of the lots, for the kind of parking area it proposes, is not prohibited.

We do not agree. Buck v. Dunn, supra, was decided, as it was, for several reasons, more than one of which were found in the particular wording and context of the restrictive covenants there involved, and do not obtain here. There, since it was well settled that a church was not the type of activity for which use of the lots was prohibited, nor was included in any of the types of buildings, whose construction thereon was prohibited, we found no ground for holding that the restrictions applied to such a religious body. Here, however, where the only use of the subject lots specifically "permitted" is for single family dwellings of a certain minimum ground floor living area, we think that the lots' use for a purpose, as different from single family dwellings, as a parking lot for employees at a nearby shopping center, is definitely prohibited. As the plaintiff in Hoover v. Waggoman, 52 N.M. 371, 199 P.2d 991, 994 (discussed in the annotation at 80 A.L.R.2d 1258, 1263) said of arguments, in that case, similar to those of the defendant here:

"If the defendant's contention is correct, that the restrictions do not apply to the use of the land, but only to the use of buildings constructed, we would have a situation where some several hundred people who have purchased lots and built residences in the addition could be greatly damaged. The owner of a home in the addition could overnight find that an outdoor skating rink, a tennis court, a baseball diamond, a football field, a swimming pool, or even a sawmill without walls around it, had sprung up next to his home and that his use of property as a residence had been greatly damaged. * * *."

(Notice other cases cited in the footnotes to 20 Am.Jur., "Covenants, Conditions, Etc.", § 220). We think that the wording of paragraph "2" of the hereinbefore quoted restrictive covenants limits the lots to use for residences quite as explicitly, if not more so, than the wording of the restrictions in Mattson v. Fezler, 202 Okl. 589, 216 P.2d 275, and other cases cited in West Nichols Hills Presbyterian Church

v. Folks, Okl., 276 P.2d 255. In the Mattson case, this court said: "We have no more right under the authorities to qualify or limit a restrictive provision by implication or construction than we have to extend its operation and effect by such methods."

In our opinion, the uncontradicted facts of the present case present a stronger showing for enjoining the use of the subject lots for the kind of a parking lot, for which defendant proposes to use it, than any of the cases cited by defendant; and the principles applied in them do not apply with equal force, or similar effect, here.

As we have concluded that the trial court properly applied the governing restrictive covenants to the property here involved, it is unnecessary to mention, or discuss, the third proposition set forth in defendant's brief.

The judgment of the trial court is hereby affirmed.

JACKSON, C. J., IRWIN, V. C. J., and DAVISON, WILLIAMS, BERRY, HODGES and LAVENDER, JJ., concur.