2003 OK CIV APP 19

**Frances O. CEBUHAR, Plaintiff/Appellee,**

v.

**William J. BOVAIRD, Marian Bovaird, William P. Huckin and Freda Huckin, Defendants/Appellants,**

Newport Realty Corporation, an Oklahoma Corporation; H.J. Trinder, III, Deborah Trinder; Edward E. Packel, Kathryn D. Packel; Sooner Federal Savings and Loan Association; Western National Bank of Tulsa, a national banking association; Bank of Oklahoma, Broken Arrow, N.A., a national banking association; Ridgely M. Bond and Maxine V. Bond, Defendants.

**No. 96,144.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Oct. 11, 2002.

Certiorari Denied Dec. 18, 2002.

William P. Huckin, Jr., Tulsa, OK, for Appellants.

Louis Levy, and James F. Gassaway, Tulsa, OK, for Appellee.

Opinion by LARRY JOPLIN, Vice–Chief Judge:

¶ 1 Defendants/Appellants William J. Bovaird, Marian Bovaird, William P. Huckin and Freda Huckin (separately, the Bovairds and the Huckins, or collectively, Appellants) seek review of the trial court's order granting attorney's fees to Plaintiff/Appellee Frances O. Cebuhar (Appellee) as prevailing party on her successful claims challenging validity of certain covenants and restrictions affecting her real property. In this proceeding,

Appellants assert Appellee is not entitled to an award of attorney's fees under the governing statutory authority, 60 O.S. § 856.

¶ 2 In 1950, L.D. and Laura McKay, owners of Lots 1, 2 and 3,[1] Block 1, Braniff Hills Addition to the City of Tulsa, conveyed Lot 3 to Rhea Burke by Warranty Deed containing restrictive covenants proscribing Burke's subdivision and sale of Lot 3 otherwise than as a "single tract," and the McKays' subdivision of "any of their remaining land abutting upon and adjacent to" Lot 3. In 1956, the McKays filed a "Restriction Agreement" imposing some limits on improvements to Lot 1:

1. No portion of the land ... described shall be used except for residential purposes.

2. No residence may be constructed on any portion of the land ... described which portion is less than one acre in area including any land subject to easements.

. . .

These covenants shall run with the land and shall be binding upon us and all persons claiming under us until August 1, 1976, at which time these covenants shall be automatically extended for successive periods of five (5) years, unless by vote of the majority of the then owners of the lands ... described, it is agreed to change the said covenants in whole or in part.

¶ 3 Notwithstanding the covenants contained in the conveyance of Lot 3, between 1956 and 1964, the McKays subsequently subdivided, sold and conveyed parts of Lots 1 and 2 to Appellee (and her husband, now deceased), the Bovairds, the Huckins' predecessor-in-interest, and the other individual defendants or their predecessors-in-interest. In a subsequent 1970 suit by Burke against the McKays and the other then owners of property in Braniff Hills, the district court vacated the covenants proscribing subdivision of Lots 1, 2 and 3 for failure of the McKays or any other grantee to demand compliance therewith. By that judgment, the district court also recognized the right of Appellee and Burke to mutual, reciprocal and exclusive use of Golden Pond, a small, specifically

1. Comprising all the lots within the subdivision.

described lake located wholly upon Lot 3 and Appellee's portion of Lots 1 and 2.

¶4 In 1983, Appellee conveyed to Defendant Newport Realty Corporation all or part of her interest in Lots 1 and 2, in consideration for which, Defendant Newport executed a promissory note secured by a mortgage.

¶5 In 1984, the purported "majority of the owners of lands in Lot 1" executed and filed an amendment to the 1956 Restriction Agreement, striking the one-acre lot-size minimum. However, in a subsequent suit by Appellants and the other then owners, the district court vacated the 1984 amendment as ineffective.

¶6 In 1986, Appellants and some of the owners of the land in Lot 1, "being a majority of the owners," and after notice to the remaining owners of record, executed and filed an "Agreement Respecting Covenants" (ARC), whereby they "ratified, renewed and ratified" the terms of the 1956 Restriction Agreement. The ARC further specified:

4. No structure may be erected in or overhanging any part of the area presently occupied by Golden Pond, being defined as that part of Lot 1, Block 1 lying below 750.8 feet mean sea level, nor may the contours of that area be changed, nor may any part of that area be included in calculating the lot area for the purposes of paragraph 2 [the one acre minimum lot size restriction] hereof.

¶7 In 1988, Appellee commenced the instant action to foreclose her mortgage upon Defendant Newport's default. Appellee named Appellants as defendants who "may claim some right, title or interest in and to the mortgaged premises arising from" the 1986 ARC, and sought an adjudication of the superiority of her claim. One or more of the named defendants challenged the foreclosure and any attendant forced sale of the mortgaged parcel as an impermissible "lot-split," proscribed by both statute and prior rulings of the Tulsa County Metropolitan Planning Commission.

¶8 In 1990, the trial court granted foreclosure, and directed issuance of a Special Execution and Sale of the mortgaged premises. The trial court, however, specifically held "the issue of the validity of the restrictive covenants of record . . . reserved for future determination."

¶9 In 1999, Appellee filed her motion for summary judgment, seeking a determination of the invalidity of the 1986 ARC provision proscribing construction near Golden Pond, i.e., on "that part of Lot 1, Block 1 lying below 750.8 feet mean sea level," as unreasonable and not adopted by a majority of landowners. Defendants H.J. Trinder, III, and Deborah Trinder filed a response and counter-motion for summary judgment, asserting validity of the 1986 ARC. The trial court denied summary relief to both parties.

¶10 In 2000, the parties subsequently presented evidence and testimony to the trial court without a jury. On consideration of the evidence, the trial court set aside the 1986 ARC and granted judgment to Appellee.

¶11 By post-judgment motion, Appellee sought an award of attorney's fees as prevailing party under 60 O.S. § 856, which the trial court granted. On the sole issue of the application of § 856, Appellants appeal.

¶12 Section 856 provides:

Any person owning property in a real estate development shall be entitled to bring action against any other person owning property in such development to enforce any of the restrictions or covenants of the real estate development which are specified by the covenants or restrictions. In any action to enforce any restriction or covenant pursuant to the provisions of this section, the prevailing party shall be entitled to recover reasonable attorney's fees to be fixed by the court, which shall be taxed as costs in the action.

Appellants argue here, as they did below, that the plain language of § 856 expressly limits its application to actions "to *enforce* any . . . restrictions or covenants." (Emphasis added.) So, say Appellants, because Appellee sought to *vacate* the restrictive covenant affecting her property, and because they never sought to *"enforce"* any of the restrictive covenants, § 856 does not support an award of prevailing party attorney's fees to Appellee.

¶13 We cannot ascribe to § 856 the restrictive reading that Appellants advance. First, § 856 plainly directs an award of attorney's fees to the prevailing party—either to a successful plaintiff or to a successful defendant—in any action to enforce restrictive covenants. Second, however, and as a practical matter, there will always be a party seeking to enforce a covenant or restriction, and a party seeking to avoid the restriction, in every controversy concerning the application of restrictive covenants. Consequently, it seems to us, to limit the application of § 856 based on which party seeks to enforce the covenant or restriction runs contrary to the practical realities of this type of litigation and the plain wording of the statute mandating an award of attorney's fees to either the prevailing plaintiff or the prevailing defendant. Because § 856 clearly contemplates an award of attorney's fees to the prevailing party plaintiff or defendant in any controversy concerning the enforcement (or non-enforcement) of a restrictive covenant, we hold the trial court did not err in granting fees to Appellee as prevailing party.

¶14 The order of the trial court is therefore AFFIRMED.

BUETTNER, J., concurs; and JONES, J., dissents.