2011 OK CIV APP 74

Robert N. GOSS, Jr. and Barbara A. Goss, husband and wife; Michael D. Johnston and Kay M. Johnston, husband and wife; and James S. Beck, Trustee of The Beck Family Trust Dated The 19th Day of August, 1986, Plaintiffs/Appellees/Counter-Appellants,

v.

Rosemary Sue MITCHELL, Defendant/Appellant/Counter-Appellee.

No. 106,928.

Court of Civil Appeals of Oklahoma, Division No. 2.

March 30, 2011.

Certiorari Denied June 20, 2011.

Firm is entitled to an attorney fee is not before us. The sole issue presented is the amount of the fee.

Jillian M. Fuqua, Todd E. Kolczun, Logan & Lowry, LLP, Grove, Oklahoma, for Plaintiffs/Appellees/Counter–Appellants.

David F. Duvall, K. Ellis Ritchie, K. Ellis Ritchie, P.C., Pryor, Oklahoma, for Defendant/Appellant/Counter–Appellee.

JOHN F. FISCHER, Judge.

¶1 Rosemary Sue Mitchell appeals from an order awarding attorney fees to appellees and cross-appellants Robert N. Goss, Jr., Barbara A. Goss, Michael D. Johnston, Kay M. Johnston and James S. Beck, Trustee of The Beck Family Trust Dated The 19th Day of August, 1986 (collectively, Plaintiffs). Cross-appellants challenge the amount of attorney fees awarded. We affirm the award of attorney fees but reverse that portion of the order setting the amount of the fees and remand for further proceedings to determine the proper amount of attorney fees to which the plaintiffs are entitled.

## BACKGROUND

¶2 This appeal arises from litigation concerning access to a swimming dock. In 1985, the owners of five adjacent lake-front lots in Buffalo Shores Unit II, a residential development on Grand Lake O' the Cherokees, agreed to build a swim dock in the cove fronting the development. The owners signed an agreement providing for equal allocation of the costs of construction, maintenance and insurance as well as equal ownership of the dock. Because the Restrictive Covenants of the development prohibited private docks, the owners sought and obtained a variance to build the dock. The owners also obtained a required permit from the Grand River Dam Authority (GRDA), owner of Grand Lake, necessary to install the private dock. The dock is anchored to the lake bed, and connected by a 70-foot ramp and two cables to the shoreline owned by the GRDA in front of lot 27. The property of the other signatories to the agreement is located on either side of lot 27. Plaintiffs and Mitchell derive their ownership from one of the five original signatories to the agreement.

¶3 Mitchell purchased lot 27 in 1996. The sellers' disclosure statement provided to Mitchell in conjunction with her purchase states that the swim dock is a feature of the property "shared in common with adjoining landowners," and that it is "jointly maintained by adjoining property owners." Nonetheless, Mitchell has personally paid for all of the permit fees, insurance and maintenance required for the dock since her purchase.

¶4 After Mitchell's purchase of lot 27, a dispute developed regarding use and ownership of the swim dock. Plaintiffs filed suit to enjoin Mitchell from interfering with their use of the dock and their individual one-fifth ownership of the dock. Ultimately, the district court granted Plaintiffs' motion for summary judgment and enjoined Mitchell from interfering with Plaintiffs' appropriate use of the dock. That order was not appealed and is now final. Plaintiffs subsequently filed a motion for attorney fees. The order granting that motion is the subject of this appeal

both as to Plaintiffs' entitlement to fees and as to the amount set by the district court.

## STANDARD OF REVIEW

¶ 5 Because Oklahoma follows the American Rule, a prevailing party is not entitled to an attorney fee award unless specifically authorized by contract, statute or some particular circumstance of the case. *See City Nat'l Bank & Trust Co. v. Owens*, 1977 OK 86, 565 P.2d 4. This rule is "firmly established." *Barnes v. Oklahoma Farm Bur. Mut. Ins. Co.*, 2000 OK 55, ¶ 46, 11 P.3d 162, 179. The issue of entitlement to an attorney fee is purely a legal question that this Court reviews de novo, without deference to the trial court's determination. *Finnell v. Jebco Seismic*, 2003 OK 35, ¶ 7, 67 P.3d 339, 342.

¶ 6 An attorney fee award must be reasonable. *Id.* at ¶ 8, 67 P.3d at 342. *See also State ex rel. Burk v. City of Oklahoma City*, 1979 OK 115, ¶¶ 21–22, 598 P.2d 659, 661. "The amount to be awarded as a fee for the services of a legal practitioner is a matter left to the discretion of the trial court and will not be disturbed absent an abuse of

discretion. Discretion is abused when a trial judge makes a clearly erroneous conclusion and judgment, against reason and evidence." *Finnell*, 2003 OK 35 at ¶ 8, 67 P.3d at 342 (footnotes omitted).

## ANALYSIS

¶ 7 Mitchell appeals the order of the district court granting Plaintiffs' motion for attorney fees. Plaintiffs have filed a counter-appeal challenging the amount of fees awarded.

### I. The Mitchell Appeal

¶ 8 Plaintiffs' motion asserted several statutory grounds for an award of attorney fees in this case, but principally relied on 12 O.S.2001 § 1141.5 of the Nonjudicial Marketable Title Procedures Act (NMTPA).[1] The district court granted Plaintiffs' motion on the basis of the NMTPA. Mitchell argues that the NMTPA does not apply because Plaintiffs did not file a quiet title action but rather sought injunctive relief, and because the dock is personal property not subject to the NMPTA.[2] We do not address these

1. Section 1141.5 provides:
   A. If a requestor prepares a notice pursuant to Section 3 of this act, and:
   1. The respondent receives the notice and fails to respond, or
   2. The respondent requests clarification or additional information and then subsequently refuses to execute and deliver a curative instrument or to take the corrective action identified in the notice, or
   3. The respondent refuses to claim the notice, or
   4. The respondent receives the notice and refuses to take the action requested in the notice, then in the event that the requestor files an action to quiet title to the subject parcel pursuant to Section 1141 of Title 12 of the Oklahoma Statutes, and the civil action results in a judgment for the plaintiff which could have been accomplished through the execution and delivery of a curative instrument or the taking of corrective action identified in a notice, the plaintiff in the quiet title action, in addition to any other requested relief, shall be entitled to recover damages equal to the actual expenses incurred by the plaintiff in identifying the relevant instrument, preparing the notice to the respondent pursuant to Section 3 of this act, and the expenses of litigation directly related to obtaining judgment quieting title in the plaintiff with respect to the interest or appar-

   ent interest forming the basis of the action against the respondent, including costs and reasonable attorney fees.
   B. If a defendant in the quiet title action who either failed to respond to a notice pursuant to Section 4 of this act or who refused to execute and deliver a curative instrument or take corrective action identified in the notice prevails in the quiet title action, the defendant in the quiet title action, in addition to any other requested relief, shall be entitled to recover damages equal to the actual expenses incurred by the defendant in responding to the notice from the requestor pursuant to Section 4 of this act, and the expenses of litigation directly related to obtaining judgment quieting title in the defendant or asserting an affirmative defense with respect to the interest or apparent interest forming the basis of the action against the defendant, including costs and reasonable attorney fees.

2. Mitchell also argues that the dock agreement was not binding on her. This issue was resolved by the district court's order granting Plaintiffs' motion for summary judgment and cannot be raised in this proceeding. *Panama Processes, S.A. v. Cities Serv. Co.*, 1990 OK 66, n. 27, 796 P.2d 276, 283 n. 27 (holding that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues

issues because we find the award of attorney fees is specifically authorized by a different statute.

¶ 9 The Supreme Court addressed the burden of the party seeking an award of attorney fees in *Curry v. Streater*, 2009 OK 5, 213 P.3d 550:

> In her application for attorney fees, Curry sought an award of fees pursuant to title 43 of the Oklahoma Statutes without stating a specific section under which she claimed fees. Oklahoma follows the American Rule for attorney fees, i.e., a party must bear the costs for its legal representation, attorney fees will not be awarded absent a specific statutory or contractual provision, and exceptions are narrowly defined. *Whitehorse v. Johnson*, 2007 OK 11, ¶ 12, 156 P.3d 41, 47. The party seeking attorney fees as a prevailing party must show a specific statutory provision applies. *See GRP of Tex., Inc. v. Eateries, Inc.*, 2001 OK 53, ¶ 11, 27 P.3d 95, 99. Curry has failed to cite a particular statutory authority which would authorize an award of attorney fees to her.

In *Curry*, the Court found that not only had Curry failed to cite any specific statute, much less one that would authorize an award of attorney fees, but also that no such statutory authority existed that would support that award.

> We note subsection 60.2(C)(1) of the [Protection From Domestic Abuse] Act allows the trial court discretion to impose attorney fees. However, Curry did not cite this section in support of an award of attorney fees.... Because we reverse the trial court's grant of a protective order, this provision does not allow for an attorney fee award. Because Curry failed to provide a statutory basis for an attorney fee award and because we reverse the trial court issuance of the protective order, we reverse the award of attorney fees.

*Curry* at ¶¶ 19–20, 213 P.3d at 557.

¶ 10 Here we have a different problem. Plaintiffs have cited a specific statute, and although that statute does not authorize the fee award, another statute does. We have

found no case discussing a movant's obligation to support an attorney fee motion with statutory authority in which the facts are similar to the facts in this case or the issue we must resolve is directly addressed. Although *Curry* clearly holds that there can be no fee award in such circumstances absent statutory authority, we are not willing to read *Curry* so broadly as to penalize a party statutorily entitled to attorney fees for incorrectly describing that authority, particularly when the facts of this case are materially different from those on which *Curry* was decided.

■■ ¶ 11 Further, a broad interpretation of *Curry* would be inconsistent with general principles of appellate review. "Every trial judge's decision comes to a court of review clothed with a presumption of correctness. If supported by law and evidence, the nisi prius judgment will be affirmed even if it was based on an incorrect theory and neither party tendered below an appropriate analysis of the applicable law." *Akin v. Missouri Pac. R.R. Co.*, 1998 OK 102, ¶ 35, 977 P.2d 1040, 1054. Here, the trial court's award of fees was not based on an incorrect theory. Plaintiffs correctly argued that there was statutory authority for their request for attorney fees, but did not point the district court to the correct statute. They did so at their peril. Nonetheless, we may affirm the decision of the district court if the result reached was correct. *Jacobs Ranch, L.L.C. v. Smith*, 2006 OK 34, ¶ 58, 148 P.3d 842, 857.

■■■ ¶ 12 The application of that principle is warranted in this case because the foundational rulings have been made. All that remains is application of the correct statutory authority. In granting Plaintiffs' motion for attorney fees, the district court correctly found that Plaintiffs' interest in the dock was derived from the Restrictive Covenants of the development and that the swim dock agreement amended the covenants. A restrictive covenant is created by contract. "It has been said that a restriction arising from a restrictive covenant is not an estate in land, as is a legal easement, but is purely a creature of equity arising out of contract."

that were or could have been raised in that     action").

*Van Meter v. Manion,* 1934 OK 615, ¶ 10, 38 P.2d 557, 559. Nonetheless, restrictive covenants create an interest in real property. As explained by the Supreme Court:

> [W]e are not unmindful of the legal right of owners of adjoining properties to bind themselves by enforceable contract, restraining the use of their property for an unlimited period of time, wherein each separate owner grants to the other owners a right in his property in the nature of an easement and which shall run with the land and be binding upon the several property owners as well as all future owners, who succeed to title with actual or constructive notice of such contract or agreement and its terms.

*O'Neil v. Vose,* 1944 OK 26, ¶ 14, 145 P.2d 411, 414. The Restrictive Covenants in this case specifically provide that they create an interest that "runs with the land," and that the covenants are binding on the property owners, as well as their successors and assigns.

> [C]ovenants restricting the use of property are generally held to be covenants running with the land, ... such covenants are binding upon the successors in interest to the parties, although there was no privity of interest between such successors and the original parties. The portion of the restricted agreement would be as binding upon subsequent owners as on the original parties to the agreement.

*Id.* at ¶ 29, 145 P.2d at 417. Finally, a restrictive covenant is to be interpreted to effect the intent of the parties. *Id.* at ¶ 0, 145 P.2d at 412 (Syllabus 2).

¶ 13 In part because the development provided boat slips for the use of all property owners, paragraph 27 of the Restrictive Covenants prohibited owners of lots in the development from "constructing or attaching boat docks, fishing docks, swimming docks, or any floating structures on the lake adjacent to their lots." Nonetheless, paragraph 20 of the Restrictive Covenants authorizes the development's Architectural Committee to grant variances to the Restrictive Covenants. As the district court found, five of the original property owners in the development obtained a variance to build one swim dock. This variance was conditioned on the owners entering into an agreement for the joint construction, maintenance and ownership of the swim dock. That agreement is in writing, it is signed by all five of the original owners and it is approved by the Architectural Committee of the development. On approval by the Architectural Committee, the agreement became part of the Restrictive Covenants of the development. "Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." 15 O.S.2001 § 158.

¶ 14 On rehearing, Mitchell argues that these two documents were not made between the same parties or as part of the same transaction. The deed of dedication containing the Restrictive Covenants was made approximately three years prior to agreement to build the boat dock. Nonetheless, as we have noted, the Restrictive Covenants contemplate the variance at issue in this case. Further, the agreement states that the parties have been granted a variance by the Architectural Committee. The agreement is signed by a majority of the members of the Architectural Committee, including one of the parties to the original deed of dedication. There is no separate document evidencing the variance, and it appears that the agreement is the only written evidence of the variance granted by the Architectural Committee. Finally, Restrictive Covenant 20 provides that if a variance is granted no violation of the Restrictive Covenants "shall be deemed to have occurred with respect to the matter for which the variance was granted." We construe this language to mean that no violation of the Restrictive Covenants occurs because the Restrictive Covenants have been amended by the variance and the variance has become a part of the Restrictive Covenants. Therefore, we are not persuaded that the subject matter of the Restrictive Covenants and the agreement by which the original five owners were granted a variance to build this swim dock are sufficiently different to preclude the application of 15 O.S.2001 § 158.

¶ 15 In this action, Plaintiffs are the prevailing parties in their action seeking to en-

force the swim dock agreement that was part of the development's Restrictive Covenants. The Real Estate Development Act, 60 O.S. 2001 §§ 851–857, provides statutory support for the attorney fee award in this case.

> Any person owning property in a real estate development shall be entitled to bring action against any other person owning property in such development to enforce any of the restrictions or covenants of the real estate development which are specified by the covenants or restrictions. In any action to enforce any restriction or covenant pursuant to the provisions of this section, the prevailing party shall be entitled to recover reasonable attorney's fees to be fixed by the court, which shall be taxed as costs in the action.

60 O.S.2001 § 856. Therefore, section 856 provides specific authorization for the award of attorney fees in this case.

¶ 16 Mitchell argues that this was not an action to enforce the Restrictive Covenants but an injunction action to enforce a private agreement. We do not find that this distinction, to the extent that it exists, precludes reliance on section 856 as authority for the attorney fee award in this case. Pursuant to section 856, any person owning property in this development could bring an action to enjoin any deviation from a variance authorized by Restrictive Covenant 20 and the variance eventually granted to the original five owners. For example, if Mitchell sought to expand the existing dock beyond the 16 × 30–foot dock for which the variance was granted, section 856 would authorize any property owner in the development, including an outvoted owner of the swim dock,[3] to seek an injunction preventing that expansion. The variance was granted to five property owners and their joint ownership was a condition precedent to the grant of that variance.[4] What Mitchell refers to as a private agreement documents that variance as well as the agreement of the five original parties granted the variance. It is merely semantical to argue that an injunction preventing one of the five from claiming sole ownership

enforces the agreement but not the variance. Even if we view the agreement as a separate instrument, the substance of Plaintiffs' action was to conform Mitchell's actions to the terms of the variance.

¶ 17 Therefore, we will not read section 856 as narrowly as Mitchell suggests. We find persuasive *Cebuhar v. Bovaird*, 2003 OK CIV APP 19, ¶ 13, 67 P.3d 348, 351 affirming an award of attorney fees to the party successfully vacating restrictive covenants and rejecting the argument that section 856 applied only to actions to "enforce" restrictive covenants. Similarly, in *Sanditen Investments, Ltd. v. Tomlinson*, 1968 OK 166, 447 P.2d 738, the Supreme Court affirmed an injunction prohibiting the construction of a parking lot because it violated a restrictive covenant permitting only single family dwellings of no less than 1,200 square feet:

> [W]here the only use of the subject lots specifically "permitted" is for single family dwellings of a certain minimum ground floor living area, we think that the lots' use for a purpose, as different from single family dwellings, as a parking lot for employees at a nearby shopping center, is definitely prohibited.

*Id.* at ¶ 9, 447 P.2d at 740. The Court rejected the defendant's argument that a parking lot was not prohibited because it was not a single family dwelling of less than 1,200 square feet, affirming the principle that restrictive covenants "run with the land" and do not solely apply to the use of the land.

¶ 18 Section 856 is part of the Real Estate Development Act, 60 O.S.2001 §§ 851–857. Section 851(1)(b) defines a real estate development as one involving "[m]utual, common or reciprocal interests in or restrictions upon, all or portions of such separately owned lots, parcels or areas, or both." One of the restrictions in this development is that five property owners, not one, may construct and maintain a swim dock. Section 856 authorizes attorney fees in an action to enforce "any restriction." The injunction obtained in

---

**3.** As Mitchell notes, the agreement among the original five owners provides that the vote of three members would determine any dispute.

**4.** Although any one of those parties could sell their individual interest, there is no indication in this record that has occurred.

this case did just that; it enforced the joint ownership of the swim dock, a condition to the variance granted by the Architectural Committee and authorized by Restrictive Covenant 20.

## II. Plaintiffs' Appeal

 ¶ 19 In their motion for attorney fees, Plaintiffs sought $38,192.50 in attorney fees and $1,730.43 in costs. Plaintiffs provided evidence in support of their motion, including the opinion of an expert witness that the time spent and hourly rate charged were reasonable. Plaintiffs also addressed each of the twelve factors established by *Burk,* 1979 OK 115, 598 P.2d 659, as relevant to determining what amount of attorney fees is appropriate in a particular case. After a hearing on Plaintiffs' motion, the district court awarded $19,973.91 as a "reasonable attorney fee in this matter" and $1,192.70 in costs.[5]

¶ 20 Plaintiffs argue that the district court's order does not provide on the record the computation required to determine the basis for the attorney fee award. We find this argument has merit. "[T]he trial court should set forth with specificity the facts, and computation to support his award." *Id.* at ¶ 22, 598 P.2d at 663. The Supreme Court reiterated this requirement in *Spencer v. Oklahoma Gas & Elec. Co.,* 2007 OK 76, ¶¶ 11–15, 171 P.3d 890, 896 (holding that the failure to follow the Burk directives in awarding an attorney fee constitutes an abuse of discretion). It may be that the amount of attorney fees awarded by the district court is the appropriate amount. If so, that cannot be determined from this record. Consequently, we reverse the order of the district court awarding Plaintiffs $19,973.91 in attorney fees.

## CONCLUSION

¶ 21 Section 856 of the Real Estate Development Act provides statutory authority for the award of attorney fees in this case. Accordingly, we affirm the district court's order granting Plaintiffs' Motion for Attorney Fees on the issue of entitlement. We affirm the award of costs to Plaintiffs as to amount, because Mitchell has not challenged the amount of costs awarded by the district court. We reverse the attorney fees award as to amount and remand this case for further proceedings to determine the appropriate amount of attorney fees to which Plaintiffs are entitled, consistent with the pronouncements in *Burk* and in this Opinion.

¶ 22 **AFFIRMED IN PART, RE-VERSED IN PART AND REMANDED FOR FURTHER PROCEEDINGS.**

BARNES, P.J., and WISEMAN, J., concur.

---

**5.** Neither Plaintiffs' petition in error nor brief in chief challenges the amount of costs awarded.