2013 OK CIV APP 74

**CEDAR CREEK I, IMPROVEMENT ASSOCIATION, Plaintiff/Appellant,**

v.

**Robert J. SMITH and Lora Smith, Defendants/Appellees.**

**No. 110,795.**

Court of Civil Appeals of Oklahoma, Division No. 4.

June 19, 2013.

Matthew L. Winton, Winton Law, Edmond, OK, for Plaintiff/Appellant.

Jeffrey S. Coe, Oklahoma City, OK, for Defendants/Appellees.

KEITH RAPP, Judge.

¶ 1 The trial court plaintiff, Cedar Creek I, Improvement Association (Cedar Creek), appeals the Small Claims trial court's judgment denying its claim against the defendants, Robert J. Smith and Lora Smith (collectively Smiths), for a special charge or assessment to pay for a public street repair.[1] In addition, Cedar Creek appeals the limitation of the attorney fee awarded to it by the trial court for collection of unpaid annual dues.

## BACKGROUND

¶ 2 This is an appeal from a decision in Small Claims court. The record evidence is supplied by an approved Narrative Statement of the agreed facts and exhibits.[2] Cedar Creek I is a duly platted subdivision in Logan County. The subdivision is not situated within the limits of any city or town. The subdivision plat establishes and dedicates rights-of-way and public streets, which come under the jurisdiction of Logan County. As part of the development process, the developer established a property owners' association.[3]

¶ 3 The developer prepared and filed of record an Owner's Certificate and Restrictions for Cedar Creek I (Restrictions). One provision in the Restrictions refers to a homeowners' association and its purpose.[4] This statement of purpose for the association provides:

> For the purpose of maintaining general planting within the roadway areas, and all common community services of every kind and nature required or desired within the subdivision for the general use and benefit of all owners, each and every lot owner, in accepting a deed or contract for any lot in such premises agrees to and shall become

---

1. In its reply brief, Cedar Creek takes issue with the term "special assessment" to identify the $2,000.00 charge. The proposal voted upon by the Cedar Creek members describes it as "a charge of $2000.00" to be "assessed" and the narrative statement drafted by Cedar Creek counsel identifies it as a special assessment.

2. Record, p. 66 and following.

3. No party claims that any of the governing documents suffer from ambiguity.

4. Record, p. 27 at 33.

a member of and be subject to the obligations and duly enacted By–Laws and rules of the Cedar Creek I, Improvement Association, an organization composed of each lot owner(s).

(Provision is made for meetings and organization.) Said By–Laws and/or rules shall be enforceable as any contractual obligation.

¶ 4 The Record includes the Cedar Creek By–Laws.[5] The By–Laws provide for officers and an executive committee. The executive committee carries out the plans and functions of Cedar Creek, but is limited to annual expenditures of $3,500.00, without previous authority from a majority vote of members present at a membership meeting. The By–Laws provide that the purpose of Cedar Creek is:

> The purpose of the Association to maintain general planting within the roadway areas, and all common community services of every kind and nature required or desired within the subdivision for the general use and benefit of all lot owners.

¶ 5 Apparently, a street in the subdivision had fallen into disrepair. The county had not undertaken to maintain or repair this street or other streets in the subdivision. On September 25, 2011, at a special meeting of the Cedar Creek membership, the members present voted in favor of an executive committee proposal, as follows: [6]

> That a one-time charge of $2,000.00 be assessed to each family in Cedar Creek I to be paid over to the Treasurer no later than October 15, 2011 to fund a road repair project to be undertaken no later than the end of October, 2011. These funds along with approximately $20,000.00 which we currently have in the treasury will be used to fund this project.

¶ 6 The Smiths are homeowners in Cedar Creek I subdivision and members of Cedar Creek. Annual dues are assessed at $250.00. Until this dispute arose, the Smiths were current on their annual dues. However, the Smiths refused to pay the $2,000.00, and also then became delinquent with their annual dues for two years in the sum of $500.00.

¶ 7 Cedar Creek filed suit in Small Claims court for both sums. The Smiths agreed that they owed the dues, but contested the $2,000.00 charge. The parties presented the case on the foregoing agreed facts and exhibits.

¶ 8 The trial court awarded Cedar Creek judgment for the $500.00 dues, plus an attorney fee of ten percent.[7] Cedar Creek claims that the trial court erred in the fee award.

¶ 9 The trial court denied recovery for the $2,000.00 charge or assessment. The trial court found that there was no authority by statute, the restrictive covenants, or in any of the Cedar Creek governing documents whereby Cedar Creek could impose a special assessment for improving public property, here a public road.[8] Therefore, the charge was unauthorized.

¶ 10 Cedar Creek appeals. In addition to the attorney fee issue, Cedar Creek first maintains that the trial court erred by ruling that the Cedar Creek governing documents fail to create a contractual obligation to pay assessments adopted by the owners as members of Cedar Creek. Next, Cedar Creek argues that the trial court erred by ruling that Cedar Creek funds could not be collected and used for the purpose of improving public property.

### STANDARD OF REVIEW

¶ 11 Where the facts are not disputed an appeal presents only a question of law.

---

5. There is no showing that Cedar Creek is other than an unincorporated association. The Record contains two sets of By–Laws. The By–Laws dated September 25, 2011 apply. Ex. 3 to Narrative Statement.

6. Cedar Creek officials provided notice and newsletter information concerning the special meeting and its purpose.

7. In Small Claims court, where the claim is uncontested the attorney fee shall not exceed ten percent of the judgment. 12 O.S.2011, § 1751(C).

8. Roads may also be dedicated as public roads pursuant to statutory procedures. Boards of county commissioners are responsible for county highways and public roads of their respective counties. Smiths have not asserted that the proposed street repairs will fail to meet any applicable standards.

*Baptist Building Corp. v. Barnes,* 1994 OK CIV APP 71, ¶ 5, 874 P.2d 68, 69. The appellate court has the plenary, independent, and nondeferential authority to reexamine a trial court's legal rulings. *Neil Acquisition, L.L.C. v. Wingrod Investment Corp.,* 1996 OK 125, 932 P.2d 1100 n. 1.

## ANALYSIS AND REVIEW

¶ 12 There is no dispute that: (1) road repairs are needed; (2) the road is a county public road by virtue of plat dedication; (3) the county commissioners have not made the repairs; and (4) Cedar Creek intended to contract directly with a private contractor to perform the repairs. The Record does not show any formal demand on the county commissioners to perform the repairs or maintenance or any legal action against the county commissioners to compel performance.[9] The Cedar Creek fund was not in the form of a donation to the County.

¶ 13 Cedar Creek begins with the proposition that the Oklahoma Real Estate Development Act (REDA), 60 O.S.2011, § 851 and following, authorizes formation of owner associations with power to do what Cedar Creek did here regarding the $2,000.00 charge or assessment. Next, Cedar Creek interprets its By–Laws and maintains that the By–Laws include the power to make charges for public street repairs.[10]

¶ 14 REDA does authorize formation of property owners' associations and provides for enforcement of restrictions and covenants. However, it does not follow that authority is also given to make a charge, or assessment, to repair public roads. The plain language of Section 852(A)(1) applies the purpose of the association to the commonly owned property and Section 852(A)(2) applies to the enforcement of mutual interests and restriction as to separately owned lots or parcels in the subdivision.[11]

■ ¶ 15 Here, the issue involves a dedicated public street. As such, the street is not common or separately owned property in the subdivision.[12] Therefore, Section 852 does not authorize formation of an owners' association with the power to make a charge or assessment for repair of a public road.

¶ 16 Moreover, Section 852(B) requires that the governing document "shall set forth in detail the nature of the obligations of the

**9.** The homeowners apparently have not attempted to form a Rural Road Improvement District, pursuant to 19 O.S.2011, § 902.1 and following. This Court notes that formation of such a District does not relieve the county commissioners of their road maintenance responsibility. 19 O.S. 2011, § 902.18. Section 902.18 reiterates the county commissioners' obligation to maintain the county roads. Section 902.18 provides:

Nothing in this act shall be deemed to exclude a county from supervision and control of the county roads in a district or to relieve the county from any duty or obligation to improve and maintain such county roads. The authority and powers of such districts shall be in addition to those of the counties and shall be carried out in cooperation with such counties

**10.** Section 852(A) and (B) read as follows:

A. An "owners association" may be formed by the owner or owners of real estate development for the purpose of:
1. providing management, maintenance, preservation and control of commonly owned areas or any portion of or interest in them, and/or
2. enforcing all mutual, common or reciprocal interests in or restrictions upon all or portions of such separately owned lots, parcels, or areas, or both.

B. An owners association shall be formed by the execution of an instrument signed and acknowledged by all owners of the real property included. Such instrument shall set forth in detail the nature of the obligations of the members and shall be filed of record in the office of the county clerk of the county wherein the real property is located. The instrument shall include a description of said real property.

**11.** Unless a contrary intention plainly appears, words used in any statute are to be understood in their ordinary sense. 25 O.S.2011, § 1; *Cave Springs Public School Dist. I–30, of Adair County v. Blair,* 1980 OK 103, ¶ 4, 613 P.2d 1046, 1048. "Where the language of a statute is plain and unambiguous, and its meaning clear and unmistakable, there is no room for construction, and the courts are not permitted to search for its meaning beyond the statute itself." *Jenkins v. Frederick,* 1952 OK 456, ¶ 13, 257 P.2d 1058, 1061 [citing *In re Martin's Estate,* 1938 OK 322, 80 P.2d 561 (Syl.1)].

**12.** Compare the facts of *The Oaks Owners' Ass'n, Inc. v. Keim,* 2004 OK CIV APP 63, 96 P.3d 1200, where planning commission required that the area designed for flood and drainage be owned and maintained by the subdivision property owners association.

members." [13] The Restrictions and the By-Laws do not set out in detail that its members have any responsibility for repair of public roads and may be charged or assessed a sum of money to repair a public road. In addition, these documents make provision only for collection of annual dues. Neither document makes provisions for assessments or charges.

¶ 17 The board of county commissioners has exclusive jurisdiction to maintain the county public roads. 69 O.S.2011, § 601; *see Okla. Attorney General Opinions,* 2011 AG 23 and 2003 AG 10.[14] Section 601 permits the board of county commissioners to accept donations or authorize formation of a rural road improvement district, but all aspects of maintenance and repair of county roads fall under the jurisdiction of the board of county commissioners.

¶ 18 Therefore, the trial court did not err by denying the claim for the special charge or assessment.

¶ 19 Next, the trial court awarded an attorney fee of $50.00 on the dues claim because the Smiths did not contest the claim for annual dues in the sum of $500.00. This ruling was in accord with the attorney fee limitation in the Small Claims statute, 12 O.S.2011, § 1751(C). Clearly, the claim for

dues and the claim for the special charge for street repair are independent claims, so the fact that the Smith's contested the special charge does not make the dues claim a contested matter.

¶ 20 Cedar Creek argues here that a separate authorization for attorney fees exists because the dispute involves real property covenants. Cedar Creek relies upon 60 O.S. 2011, §§ 854, 856. Section 854 authorizes a homeowner's association to enforce covenants and restrictions in the real estate development when specified by the covenants and restrictions. Section 856 authorizes an attorney fee for the prevailing party in an action by a property owner against another property owner to enforce covenants and restrictions.

¶ 21 The relevant instruments are the plat Restrictions and the Cedar Creek By-Laws. The "Right to Enforce" restrictions article in the Restrictions does not include the homeowners association. The "Homeowner's Association" article in the Restrictions does not specify that Cedar Creek may enforce covenants and restrictions. The Cedar Creek By-Laws do not specifically authorize the enforcement of covenants and restrictions.

■ ¶ 22 Nevertheless, if the statement of purpose language is somehow construed to

---

**13.** Cedar Creek cites to the Oklahoma General Corporation Act codified in Title 18 of the Oklahoma Statutes, for its contention that the Act provides for expansive powers for Cedar Creek. However, the Record shows that Cedar Creek is an association. The Record does not show that Cedar Creek was incorporated either as a business corporation or otherwise. Therefore, the contention that the Act enlarges the powers and purposes of Cedar Creek must be rejected.

**14.** Section 601 provides:

A. *The county highway system shall be composed of all public roads within any county,* less any part of any road or roads which may be designated as a state highway by the State Transportation Commission. *It shall be the duty of the board of county commissioners in each county to construct and maintain as county highways those roads which best serve the most people of the county. For this purpose the board of county commissioners is authorized to use any funds which are in the county highway fund, subject to statutory restrictions on the use of any of such funds, together with any money or item of value derived from any agreement entered into between*

the county and the Transportation Commission, the federal government, this state, any other county or political subdivision of this state or other governmental entity, or any citizen or group of citizens who have made donations for that purpose. *The boards of county commissioners of the various counties shall have exclusive jurisdiction over the designation, construction and maintenance and repair of all of the county highways and bridges therein.* All interlocal cooperation agreements made pursuant to this section between counties and those political subdivisions or citizens of a county shall be submitted to the district attorney of each of the counties subject to the agreement for approval. All other interlocal cooperation agreements shall be submitted and approved in accordance with Sections 1001 through 1008 of Title 74 of the Oklahoma Statutes.

B. The boards of county commissioners are hereby authorized to establish road improvement districts as provided by law for existing roads in the unincorporated areas of counties. The boards of county commissioners may also have improvements made on existing roads in unincorporated areas of counties on a force account basis. (Emphasis added).

permit Cedar Creek to enforce covenants and restrictions, the attorney fee provision in Section 856 does not apply to Cedar Creek or to the facts of this case. The Oklahoma Supreme Court has consistently ruled that in Oklahoma strict adherence to the American Rule as to the recovery of attorney fees in litigation remains the law. *Fulsom v. Fulsom*, 2003 OK 96, ¶ 8, 81 P.3d 652, 655. Thus, there must be a specific statute or contract allowing for recovery. Statutes are strictly construed and the authorization under a particular statute "must be found within the strict confines of the involved statute." *Id.*

¶ 23 Cedar Creek is not a property owner that is suing another property owner to enforce covenants and restrictions. Therefore, Section 856 does not apply.

¶ 24 Cedar Creek cited *Goss v. Mitchell*, 2011 OK CIV APP 74, 259 P.3d 886. *Goss* is distinguished because that case was an action by property owners against a property owner to enforce a covenant or restriction. Likewise, *Cebuhar v. Bovaird*, 2003 OK CIV APP 19, 67 P.3d 348, was an action by a property owner against other property owners to enforce restrictions.

¶ 25 Therefore, the trial court did not err in its judgment and the judgment is affirmed.

## SUMMARY

¶ 26 Cedar Creek, an unincorporated homeowners association, sued Smiths in Small Claims court to recover a special charge or assessment for the purpose of payment for repairs to a dedicated public county road in the Cedar Creek I subdivision. The statutes, Plat Restrictions and Cedar Creek By–Laws do not authorize such a special charge or assessment. In addition, the county board of commissioners has the exclusive authority and jurisdiction to repair and maintain the county roads. Therefore, the trial court correctly denied the claim.

¶ 27 Cedar Creek also sued to recover homeowner dues of $500.00 from Smiths. Smiths did not contest the claim. The trial court correctly limited the attorney fee to ten percent of the claim, $50.00, pursuant to 12 O.S.2011, § 1715(C).

¶ 28 The judgment is affirmed.

¶ 29 AFFIRMED.

THORNBRUGH, P.J., and GOODMAN, J., concur.